**BONDIES et ux. v. GLENN.**

No. 1815.

Court of Civil Appeals of Texas.   Eastland.

June 24, 1938.

Rehearing Denied Sept. 23, 1938.

Harry R. Bondies, Mays & Perkins, Beall, Beall, Yonge & Neblett, Anderson & Dickson, P. Edward Ponder, and Steakley, Harris & Nunn, all of Sweetwater, for plaintiffs in error.

Jno. B. Daniel, of Temple, and Critz & Woodward, of Coleman, for defendant in error.

FUNDERBURK, Justice.

Harry R. Bondies and wife, Mrs. Maude Bondies, brought this suit against H. C. Glenn, individually, and as receiver of Temple Trust Company, a corporation. The defendant in both capacities pleaded general demurrers to plaintiffs' petition, which were by the court sustained. Upon plaintiffs declining to amend, the case was dismissed. From such judgment of dismissal, the plaintiffs have prosecuted writ of error to this court.

The question for decision, stated most comprehensively, is whether plaintiffs' petition was sufficient to allege a cause of action against the defendant in the capacities in which he was sued, or either of them. Because of an agreement of the parties, even this question may be narrowed to a consideration of whether such pleading stated a cause of action entitling plaintiffs to recover other than nominal damages. The pleading in question, as transcribed into the record, consists of pages 1 to 32, inclusive. By reason of its length we shall not set it out in full in this opinion, but shall state its legal effect, in a general way, as we interpret it. The parties will be referred to as in the trial court—plaintiffs-in-error as plaintiffs, and defendant-in-error as defendant.

The question at issue can perhaps best be approached by considering first the nature of the cause of action, or causes of action, attempted to be alleged. It is safe

to assume as a premise, we think, that plaintiffs in their pleading attempted to allege a cause of action (1) for wrongful suing out and levying a writ of attachment on plaintiffs' homestead, or (2) for fraud and deceit, or (3) for both. In any event, the action was upon tort.

In determining whether an action requiring a resort to construction to determine its nature is upon contract or tort, the rule is that: "If it appears that the action is based upon a promise, express or implied, it is ex contractu, even though there are allegations in the complaint appropriate to an action in tort based upon fraud, such allegations not affecting or changing the nature of the action. Conversely, if it appears that the gravamen or gist of the complaint is the fraud and deceit, the action is in tort, although the complaint contains allegations of a contract such as by way of inducement." 1 C.J.S., Actions, p. 1110, sec. 49 b (1). Also, 1 C. J. 1020, sec. 142.

No reason occurs to us why this same principle may not be applicable where the question, as here, is, not whether the action be ex contractu or ex delicto, but whether it be the particular ex delicto action of wrongfully causing the issuance or levy of an attachment, or the ex delicto action of fraud and deceit. Believing such rule applicable, we think the gravamen or gist of the cause of action attempted to be averred by plaintiffs is to be found generally expressed in the first part of the pleading as follows: "For cause of action plaintiffs show that heretofore, to-wit, on the 28th day of August, 1935, said defendant H. C. Glenn, receiver as aforesaid, and acting as such receiver through his duly authorized agent and attorney, John B. Daniel, without probable cause, maliciously and for the purpose of gaining unconscionable advantage over the plaintiffs and thereby extorting, coercing and forcing plaintiffs to sacrifice their homestead, wrongfully and with knowledge of such wrong, and knowing that the property attached was the homestead of plaintiffs, levied writ of attachment upon the homestead of plaintiffs in Sweetwater, Texas, *under the circumstances and to their great damage as hereinafter set forth.*" (Italics ours.) All that is thereinafter "set forth" purports, therefore, to be but the "circumstances" under which such wrongful levy of attachment was made, and a specification and description of plaintiffs' "great damage" resulting therefrom. There seems to be nothing in the allegations themselves inconsistent with the character by which they are thus denominated by the plaintiffs.

It follows, in our opinion, that the pleading is not reasonably susceptible to any other construction than that but one cause of action was intended to be alleged, and that was for the wrongful levy of the attachment on plaintiffs' homestead.

As a general rule an ordinary levy of attachment upon real estate will not authorize a recovery of damages. Trawick v. Martin-Brown Co., 79 Tex. 460, 14 S.W. 564; 5 Tex.Jur. p. 269, sec. 108. It would be equally accurate to say, and at the same time include in the statement, the underlying reason therefor, that, as a general rule, the levy of an attachment on real estate will not result in legal injury to the owner and hence there can be no recovery of damages. The cases in which damages are recoverable are generally limited to those in which there has been a physical seizure of the property and consequent disturbance of the owner's possession. 5 Tex.Jur. 270, sec. 109; Schulte v. Republic Supply Co., Tex.Civ.App., 297 S. W. 667; Low v. Ne Smith, Tex.Civ.App., 77 S.W. 32. Plaintiffs' petition, in effect, negatived the existence of any injury consisting of loss or disturbance of possession, or of the use and enjoyment of the premises as the result of the levy.

The question at issue may, therefore, be further narrowed to this: Do the allegations show a right to recover actual damages? In considering this question, the term "actual damages" will not be regarded as including nominal damages. This results, as already said, from an agreement of the parties, plaintiffs having, in effect, formally agreed that if their petition stated a cause of action for no more than nominal damages, it should be considered as stating no cause of action at all.

If the petition was insufficient, as tested by the general demurrers, to state a cause of action for substantial actual damages, then there is eliminated any further question of the sufficiency of the pleading to authorize recovery of exemplary damages.

The general rule is that unless actual damages be recoverable, exemplary damages are not recoverable. Girard v. Moore, 86 Tex. 675, 26 S.W. 945; Flanagan v. Womack, 54 Tex. 45; Trawick v.

Martin-Brown Co., supra; Jones v. Matthews, 75 Tex. 1, 12 S.W. 823.

■ Irrespective of the agreement aforesaid, if only nominal damages were recoverable, under the allegations of the petition, exemplary damages were not recoverable. Girard v. Moore, supra.

■ It is our conclusion that the allegations of the plaintiffs' petition show that plaintiff suffered no legal injury from the levy of the attachment, assuming it to have been wrongful. Injury and damages are not synonymous. A person may sustain actual damage without sustaining any legal injury. 1 C.J.S., Actions, p. 1,005, sec. 15a; 1 C.J. 964, sec. 57. "In such cases the damage is damnum absque injuria and no cause of action arises in favor of the party sustaining it against the party by whose act it was caused." 1 C.J.S., Actions, p. 1006, sec. 15b (1); 1 C.J. 964, sec. 57.

■ This principle finds its most usual application, perhaps, in actions seeking to recover damages resulting from bringing or defending legal actions. With regard to such actions it is said:

"Although one party may thereby subject the other to unnecessary trouble and expense, unless the action is malicious and without probable cause * * * the damage so caused is damnum absque injuria, and, as a general rule, a cause of action cannot be maintained for redress therefor, except in so far as it may be covered by a contract of indemnity, or the successful party may be entitled to redress by way of taxable costs * * *, notwithstanding this may be inadequate as compensation.

"In accordance with this general rule, a plaintiff cannot maintain an action to recover the costs, expenses, and other damages incidental to the successful prosecution of an action which he is forced to bring in order to enforce or establish a right which defendant has unlawfully withheld or denied; and this rule has been held to apply although the defendant has unjustly and maliciously defended the action.

"On the other hand the mere fact that plaintiff's action is unjust or unfounded gives defendant no cause of action to recover the costs, expenses and other damages incidental to the successful defense of the action, unless * * * there was both malice and want of probable cause in the bringing of the action as where he uses the processes of the courts for the sole purpose of injuring another, or to compel that other to do some act against his will." 1 C.J.S., Actions, p. 1006, 1008, § 15b (4); 1 C.J. 967, sec. 60.

It is our conclusion—and evidently such was the conclusion of the trial court—that each and all of the elements of damages alleged were, by the allegations of the pleading in question, affirmatively shown not to have resulted from legal injury within the operation of the principles above stated. It is deemed unnecessary to take up and discuss separately and particularly the different elements of alleged damage. They are all believed to be subject to the same principle.

In fact, we do not understand from plaintiffs' able and comprehensive brief that it is therein contended otherwise, except and unless the cause of action was one for fraud and deceit, the damages averred being the natural and probable result of the fraud and not merely of the wrongful levy of the writ of attachment. We shall, therefore, confine the discussion to an examination of this contention.

■ "Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another." 26 C.J. 1059, sec. 1. A good statement of the elements of actionable fraud, recognized by the courts of our state, with one exception to be noted, is: "(1) A representation. (2) Its falsity. (3) Materiality. (4) The speaker's knowledge of its falsity, or ignorance of its truth. (5) His intention that it should be acted upon by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury." 26 C.J. 1062, sec. 6. According to decisions of Texas courts, the fourth element—"The speaker's knowledge of its falsity, or ignorance of its truth"—is under most circumstances not regarded as essential. 20 Tex.Jur. 19, sec. 8; Id. 42 sec. 23. According to said definition, an element of fraud is *a representation*. This may be true, even where the fraud consists only of affirmative acts of concealment, since such acts themselves imply a representation that the concealed fact does not exist or is otherwise than naturally to be assumed. It is not easy to see that a rep-

resentation is an element of fraud which involved only a failure to disclose the truth when the circumstances are such as that there exists a duty to disclose. For purposes of the present discussion, however, we need not sanction unqualifiedly the view that a representation is an absolute essential of all fraudulent transactions. In the instant case, the fraud which plaintiffs contend was sufficiently alleged did consist of representations. The representations, if any, were not alleged to have been expressed, and must, therefore, have been implied. In their brief plaintiffs say that the damages, actual and exemplary, sought to be recovered were "the result of his [defendant's] making levy of an attachment writ upon the homestead of plaintiffs-in-error * * * *under claim that their absence from it constituted abandonment of the homestead right in it. Fraud,* as shown by the petition, inheres in the action taken by the defendant by virtue of the fact that (in order to get the rents from it for our creditor the Temple Trust Company) *he induced us to remain out of our home by knowingly, deliberately and intentionally* leading us to believe, through false representations, he would not claim such absence constituted abandonment of our homestead rights in the property attached."

More than one answer is readily suggested which seem to us to be conclusive against this view. In the first place, regardless of the precise nature of the implied "false representations" which the pleading does not disclose, such representations, according to the allegations, completely failed of their purpose. It is affirmatively shown that they did not induce the only material action (or inaction) intended, if any. That is to say, they did not cause the plaintiffs to abandon their homestead. The homestead was never abandoned. Since a temporary rental of the homestead is not an abandonment (Const. Art. 16, sec. 51, Vernon's Ann.St. Const. art. 16, § 51), representations, false or otherwise, designed to induce one to rent the homestead temporarily, and in the meantime live in another place, would not constitute representations made to induce the loss of the homestead exemption.

Plaintiffs admit that their pleadings in order to have expressed all essentials should have alleged "that at the time the defendant and his agents made such representations, as aforesaid, the defendant did not intend complying with them." This implies that the representations were in the nature of promises to be performed in the future. It is conceded, if we understand the argument, that such an allegation was necessary, but that it should be held to be implied from what was expressly alleged. In effect, therefore, it is thus impliedly if not expressly, conceded that the case is ruled by the law governing that character of false representations which consist of false promises. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am.St.Rep. 39; Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S.W. 322; Cearley v. May, 106 Tex. 442, 167 S.W. 725; Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873. It seems clear to us, that the facts alleged, as a matter of law, do not imply any such representations—as is argued—regarding the homestead, or material to the question whether such property was or was not subject to attachment. The property was not subject to attachment unless it had been abandoned as the home of the family. What material promises could the defendant have made which would not have had for the purpose thereof the inducement of plaintiffs to abandon their homestead and consequently lose its exemption? We can conceive of none. Yet, as already seen, if some such promises be implied, it affirmatively appears from the pleading that they wholly failed of their intended effect. The exemption was not lost.

Every fact alleged by plaintiffs, occurring up to the time of the levy of the attachment, was entirely consistent with the belief on the part of the defendant that plaintiffs, would be able to and would pay their debt without default. Every act charged to defendant prior to the levy of the attachment was entirely consistent with good faith and fair dealing. There is no fact alleged upon which to rest an implication that from the very first the defendant, even if promises be implied, intended ultimately to subject the James Street property to the payment of the debt in violation of such promises.

One proposition is believed to be deducible from, and clearly supported by the record, which, we think, is entirely conclusive of the question at issue. That proposition is that, regardless of everything alleged in plaintiffs' petition, none of the damages—having regard both to the

character and amount thereof—would have resulted but for the levy of the attachment; and all such damages would have resulted just as they did from the attachment alone, regardless of all the matters alleged which are now claimed to show fraud. The levy of the attachment was in no sense a result of the matters claimed to constitute fraud. It cannot be said that but for fraud the damage would not have resulted. Therefore, such damages could not reasonably have been expected as the natural and probable consequences of the matters claimed to constitute fraud. . Such damages, the allegations show, resulted solely from the alleged wrongful levy of attachment, which, by reason of their not being legal injuries, as said before, are not recoverable.

Believing that no error was committed and that the judgment of the court below should be affirmed, it is so ordered.