W.G. ELLIS, Petitioner,

v.

G.C. WALDROP et al., Respondents.

No. C–1152.

Supreme Court of Texas.

July 20, 1983.

Rehearing Denied Sept. 21, 1983.

Garrett & Settle, Rufus S. Garrett, Jr. and P.O. Settle, Jr., Fort Worth, for petitioner.

Law, Snakard & Gambill, Walter S. Fortney and A. Burch Waldron, III, Fort Worth, Bliss & Hughes, Jerry Lee Hughes, Dallas, Hill, Heard, O'Neal, Gilstrap and Goetz, Frank Gilstrap, Arlington, for respondents.

BARROW, Justice.

Our per curiam of May 26, 1982 on motion for rehearing is withdrawn and the following opinion is substituted.

G.C. and Thomas Coleman Waldrop, respondents, filed a declaratory judgment action seeking to remove cloud on the title to a tract of land created by a recorded right of first refusal held by W.G. Ellis, petitioner. Respondents Richard A. Aghamalian, Robert Mahoney and Brad L. Wilemon filed cross-claims against Ellis for damages arising from slander of title or cloud of title. After a jury trial, the trial court rendered judgment cancelling Ellis' right of first refusal and removing cloud of title on the property; awarding damages to Wilemon and Mahoney for slander of title, and; awarding attorney fees to Wilemon, Mahoney and the Waldrops. The court of appeals affirmed. 627 S.W.2d 791. We affirm the judgment of the court of appeals in part, but reverse that part of the judgments of the courts below awarding damages for slander of title and awarding attorney fees to the Waldrops.

In July of 1975, G.C. Waldrop sold two and one-half acres of a seven and one-half acre tract located in Arlington, Texas to Ellis and his wife. Following this sale, the parties executed an addendum to the land sale contract which provided that Ellis would have a right of first refusal on the remaining five acres. This agreement was recorded in the deed records.

On April 14, 1977, G.C. Waldrop received an offer from "Richard A. Aghamalian, Trustee," to purchase the remaining acreage. Thomas Coleman Waldrop, who was empowered to transact G.C. Waldrop's business by written power of attorney, accepted the offer and executed the contract of sale on behalf of his father. The contract provided for a purchase price of $55,000 and obligated Waldrop to pay a real estate commission to Don Morris and Aghamalian, individually, as brokers.

On April 15, 1977, the Waldrops' attorney notified Ellis by letter of the offer from Aghamalian. Attached to the letter were copies of the Aghamalian contract and a proposed contract for execution by Ellis. Shortly after receiving the letter, Ellis met with Aghamalian and Morris to discuss the proposed development of the tract. Ellis' concern was to put deed restrictions upon the remaining acreage to control the quality of housing which would be constructed. Aghamalian, however, refused to accept Ellis' proposed restrictions.

On May 17, 1977, Ellis notified the Waldrops' attorney by letter of his objections to their offer. Specifically, Ellis objected to the fact that, under the Aghamalian contract, Aghamalian would be receiving back a sum of $3,300 as a real estate commission, and thus would, in fact, be paying less than the purchase price on the face of the contract. Ellis refused to sign a written release waiving his right of first refusal.

On August 3, 1977 the Waldrops conveyed the property to Aghamalian and Wilemon. In October 1977, Aghamalian conveyed his undivided one-half interest in the property to Mahoney.

On April 12, 1978, Ellis attended and participated in a public planning and zoning commission hearing requested by Wilemon for a zoning change on the property. At the hearing, Ellis stated that he "had a first refusal" but that after Aghamalian contacted him, he "looked at the tract ... with the idea of possibly going ahead and exercising my first refusal," and after further discussions with Aghamalian, "then I didn't really oppose the purchase [by Aghamalian]." After the hearing, however, Ellis notified Aghamalian and Wilemon by letter that he was still claiming a right of first refusal.

The Waldrops' declaratory judgment action sought determination of Ellis' conflicting claim arising from the right of first refusal agreement and cancellation or recission of the agreement. Aghamalian, Maho-

ney and Wilemon cross-claimed against Ellis for removal of the cloud created by the right of first refusal agreement from their title, actual damages for slander of title and attorney's fees.

After a jury trial, the trial court rendered judgment cancelling Ellis' right of first refusal and thereby removing cloud of title on the property, awarding actual damages of $10,500 to Wilemon and Mahoney for slander of title, and awarding attorney fees to the Waldrops, Wilemon and Mahoney.

The court of appeals affirmed the trial court judgment. In sustaining the award of damages for slander of title, the court of appeals held that loss of a specific, pending sale is not essential to award of damages in a slander of title suit.[1] As an alternative basis for upholding the award of damages, the court held that damages for cloud on title may be awarded upon sufficient proof of loss.

We granted the application for writ of error in this case to consider whether Wilemon and Mahoney were required to prove *loss of a specific sale or sales in order to recover in this action.* Before reaching this question, however, we must address Ellis' assertions that he did not waive his rights under the agreement because the Waldrops failed to comply with the requirements of the right of first refusal agreement and that Aghamalian, Wilemon and Mahoney did not sufficiently investigate Ellis' claim to allow them bona fide purchaser for value status.

■ The right of first refusal agreement provided, in part:

In consideration of the purchase by William G. Ellis, as Purchaser, from G.C. Waldrop, as Seller, of a tract of land ... G.C. Waldrop does give, grant and convey unto said William G. Ellis, an exclusive option to have the express right of first refusal for the sale by said Waldrop of any part or all of the remaining acreage .... It is agreed that *Waldrop must first offer the tract ... to Ellis for his refusal at the same price as is being offered by any third party or parties for* *the same in a bona fide offer by a proposed purchaser, who is ready, willing and able to purchase same, and that the terms offered to Ellis must be not less than those offered by the proposed third party purchaser. Ellis shall have a reasonable time, not to exceed 30 days in which to refuse to purchase same, at which time this option as to the tract offered for sale or purchase, shall cease and said tract shall be free and clear of any further rights on behalf of said Ellis, only if said tract or tracts is sold to said Third Party and closed.* (emphasis added).

The jury found that Waldrop substantially performed his duty to offer the property to Ellis as required by the right of first refusal contract, at the same price, and on the same terms as those offered by Aghamalian, trustee, and that Ellis waived his right of first refusal to purchase the property by failing to exercise his right within 30 days following the receipt of the offer. The jury also found each purchaser to be a bona fide purchaser for value without notice that Ellis was still claiming a right of first refusal at the time of their purchase. The court of appeals held there is probative evidence to support these findings. We agree and therefore overrule points one through seven.

Wilemon and Mahoney allege that Ellis' failure to release his purported interest in the property hindered their efforts to develop the tract and that they are entitled to actual damages incurred as a result of this impairment. Wilemon and Mahoney admit they did not wish to sell the property and never attempted to do so. The damages alleged include property taxes and mortgage interest incurred during the period of impairment. Ellis urges that these damages are not recoverable for slander of title or to remove a cloud on title.

■ In *A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145 (Tex.1982), we reaffirmed the long-standing general rule in Texas that in order to recover damages for the disparagement of title, the plaintiff must allege the

---

1. At the time the court of appeals rendered judgment in this case, we had not yet decided

*A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145 (Tex.1982).

loss of a specific sale. 632 S.W.2d at 145–46; *see Shell Oil Co. v. Howth,* 138 Tex. 357, 159 S.W.2d 483, 490 (1942). Furthermore, this Court has established that a cause of action to recover damages for the failure to release a purported, though not actual, property interest is a cause of action for slander of title. *A.H. Belo Corp. v. Sanders,* 632 S.W.2d at 146; *Reaugh v. McCollum Exploration Co.,* 139 Tex. 485, 163 S.W.2d 620, 622 (1942); *Shell Oil Co. v. Howth,* 159 S.W.2d at 490; *see Kidd v. Hoggett,* 331 S.W.2d 515, 518 (Tex.Civ.App. —San Antonio 1959, writ ref'd n.r.e.). No Texas case has ever awarded damages under the rubric "cloud on title." A suit to remove a cloud from title is a suit for a specific, equitable remedy. *E.g., Thomson v. Locke,* 66 Tex. 383, 1 S.W. 112, 115 (1886); *Katz v. Rodriguez,* 563 S.W.2d 627, 629 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ We hold that Wilemon and Mahoney were required to prove the loss of a specific sale or sales in order to recover on their slander of title action.

Finally, Ellis challenges the award of attorney's fees to the Waldrops.[2] He urges that since the suit was for a declaratory judgment to determine Ellis' rights under an agreement which placed no obligations on him, no cause of action was asserted by the Waldrops against Ellis which was founded on an oral or written contract. Article 2226 provides, in pertinent part:

> Any person, corporation, partnership, or other legal entity having a *valid claim* against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or *suits founded on oral or written contracts, may present the same to such persons* or corporation or to any duly authorized agent thereof; *and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been ten-*

> *dered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.* (emphasis added).

Section 2 of the 1979 amendatory act to this article provides, "This act is remedial in character . . . ."

■ In order to recover attorney fees in a suit "founded on" a written contract under this article, a plaintiff must plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance. *France v. American Indemnity Co.,* 648 S.W.2d 283, 285–86 (Tex.1983); *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981); *El Paso Nat'l Bank v. Leeper,* 538 S.W.2d 803, 806 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). Therefore, an essential element to recovery of attorney fees under article 2226 is the existence of a duty or obligation which the opposing party has failed to meet. In the case here, Ellis was under no obligation to act under the right of first refusal agreement. The Waldrops filed the declaratory judgment suit merely to determine whether Ellis' rights under the contract had terminated prior to the sale to Aghamalian and Wilemon. Article 2226 was not intended to penalize a party for asserting a purported right under a contract. We hold the trial court erred in awarding the Waldrops attorney fees under article 2226.

We reverse the judgments of the courts below awarding damages for slander of title to Wilemon and Mahoney, and awarding attorney fees to the Waldrops. In all other respects, the court of appeals' judgment is affirmed.

SPEARS, J., concurs in an opinion in which KILGARLIN, J., joins.

SPEARS, Justice, concurring.

I concur in the judgment of the Court denying recovery to Wilemon and Mahoney.

I disagree, however, with the majority's view that *A.H. Belo Corp. v. Sanders,* 632

---

**2.** Ellis did not challenge the award of attorney's fees to Wilemon and Mahoney based upon their slander of title action. *Cf. Ryan v. Mo-Mac*

*Properties,* 644 S.W.2d 791 (Tex.App.—Corpus Christi 1982, no writ).

S.W.2d 145 (Tex.1982), necessarily controls the disposition of this case. In *Belo,* the only damages the plaintiff sought in his slander of title action were for impairment of vendibility of his land. In denying his recovery, we applied the "general rule long-standing in Texas" that proof showing only impairment of vendibility does not establish a right to damages. *Id.* at 146. The sound basis for that long-standing rule is that a plaintiff's only damages in a slander of title action are special damages in the form of pecuniary losses, *Louis v. Blalock,* 543 S.W.2d 715, 717 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.), which must be proven with sufficient certainty and particularity to avoid the need for speculation or conjecture by the fact finder. *Houston Chronicle Publishing Co. v. Martin,* 5 S.W.2d 170, 174 (Tex.Civ.App.—El Paso 1928, writ dism'd) ("In [slander of title actions] there is a reason for the rule [generally requiring proof of loss of a pending sale] because the intrinsic or market value of the property itself is not ordinarily affected."). Absent such proof, there is no adequate way to determine whether the defendant's wrongful conduct actually caused the plaintiff to suffer pecuniary losses, and if so, the amount of those losses. For this reason, I believe *Belo* was correctly decided.

In this case, however, Wilemon and Mahoney did not allege that Ellis's malicious conduct had prevented them from selling their land to some specific buyer. They conceded that they had no desire to sell the property. Instead, they alleged that Ellis's malicious assertion of a right of first refusal on that land had prevented them from obtaining a specific development loan in the amount of $50,000 to $60,000, for which the land was to be used as collateral. Wilemon and Mahoney claimed that certain lenders would not grant their request for financing unless they secured title insurance and that two title insurance companies refused to give them such insurance because of Ellis's claim.

I know of no case decided by a Texas court in which the plaintiff was either allowed or denied recovery in a slander of title action after proving that the defendant's malicious conduct caused a third party not to provide, or to delay in providing, specific desired financing on the particular property. It is true, as the majority points out, that the opinions in *Belo* and earlier Texas cases contain language indicating that the only allowable damages in such an action are for loss of a specific sale. In my opinion, however, the scope of those decisions should be limited to the facts and allegations presented to the courts in those cases. In future cases, this Court should allow recovery when the plaintiff can prove with reasonable certainty his pecuniary losses proximately caused by the lender's refusal to provide the loan at the time the plaintiff was seeking it. For example, if a defendant maliciously clouded the plaintiff's title on some real estate, causing a bank to delay the granting of a loan on that property, I would allow recovery for at least the losses attributable to the increase in the interest rate during the time the plaintiff was unable to get the loan.

The proof offered by Wilemon and Mahoney in the trial of this case, however, is inadequate to support recovery, even under the approach advocated in this concurrence. No evidence was offered to show from whom the loan was supposedly sought, what interest rate the loan would have carried, and what specific financial harm was suffered as a result of the inability to get the desired loan at the time it was sought. The evidence shows only that Wilemon and Mahoney continued to pay interest and taxes on loan money they had already received. Since they would have been obligated to make those payments regardless of Ellis's acts, Ellis should not be held responsible for expenses associated with those earlier loans.

I therefore concur in the judgment of the Court.

KILGARLIN, J., joins in this concurring opinion.