**SOUTHWEST GUARANTY TRUST COMPANY and Robert R. Combs, Appellants,**

v.

**HARDY ROAD 13.4 JOINT VENTURE, Appellee.**

No. 01–96–01558–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 3, 1998.

Mark F. Elvig, Ryan & Sudan, LLP, Houston, for Appellants.

Gary W. Dugger, John Wesley Wauson, Houston, for Appellees.

Before Justices COHEN, HEDGES, and TAFT.

## OPINION ON REHEARING

MURRY B. COHEN, Justice.

Appellee, Hardy Road 13.4 Joint Venture (the joint venture), has moved for rehearing. We overrule the joint venture's motion, but we withdraw our opinion dated October 22, 1998 and substitute this opinion in its place. Our judgment of October 22, 1998 remains unchanged.

Appellants, Southwest Guaranty and Trust Company (SGTC) and Robert R. Combs (together, appellants), appeal a judgment based on a jury verdict of $299,500 against them. The joint venture asserts cross-points for attorney's fees. We affirm in part and reverse and render in part.

### Background

A group of investors formed the joint venture to buy 13.425 acres of land in Houston (the property). The property was held in the name of Thomas H. Nation d/b/a Win Property Investments, not a party to this appeal, as the joint venture's trustee. Nation had no ownership interest in the property.

Nation, who was convicted of theft and mail fraud in federal court, was the genesis of this dispute. SGTC's predecessor, Med Center Bank, had handled Nation's personal and joint venture matters since 1982. Many of Nation's dealings were through Combs, who became the bank's president in 1982. Combs knew that Nation was a real estate developer who had held property as trustee for himself and for others and that much of what Nation had done through 1985 was tied up in joint venture and property holding investments.

In 1986, Nation borrowed $160,000 for what the bank knew were personal business obligations. The joint venture neither authorized Nation to use the property as collateral nor consented to encumber it. Nevertheless, while concealing the transaction from the venture participants, Nation proposed securing the loan with a lien on the property, which he misrepresented he owned. Despite knowing a title search showed Nation as "trustee," Combs took Nation's assurance that the property was solely his without investigating further, even though the bank's files contained evidence indicating Nation did not own the property. Combs admitted it was good, standard banking practice to evaluate assets and liabilities each time the bank received a borrower's financial statement or issued a loan and that, if the bank had evaluated Nation's financial information, it could have seen the loan was "fishy."

Nation executed a security agreement, and the bank recorded its lien. The bank renewed Nation's loan periodically and increased it to $267,688 to pay off other unsecured personal loans to Nation.

When Nation defaulted on this loan, the bank, having learned of the joint venture and claiming that Nation had acted on the joint venture's behalf, requested the joint venture bring payments current. The joint venture demanded release of the deed of trust and lien. When the bank threatened foreclosure, the joint venture sued for a declaration that

the lien was invalid and for negligence and gross negligence, intentional wrongdoing, fraud, breach of and conspiracy to breach fiduciary duties, statutory fraud involving real estate, tortious interference with contract, conversion and conspiracy to convert, and quieting of title.

The judge charged the jury on negligence, fraud, and certain special issues.[1] The jury returned a verdict for the joint venture, finding (1) the property was held in trust for the joint venture, (2) the bank had constructive (but not actual) knowledge of the trust, (3) there was no fraud, and (4) the bank and Combs were negligent. It awarded the joint venture $299,500 in damages and $293,000 in attorney's fees for trial, with $75,000 in conditional fees for appeal. The trial judge rendered judgment removing cloud of title, declaring the bank's lien unenforceable and invalid, awarding the full amount of damages plus $191,596.79 prejudgment interest, and denying attorney's fees.

### Causation of Damages

In issues two and three, appellants contend there was legally and factually insufficient evidence that their negligence caused the joint venture's damages. In issues four through seven, appellants claim (1) loss-in-value was an improper damage measure, (2) taxes were an improper damage measure, and (3) there was legally and factually insufficient evidence of any damage. We consider these issues together.

We follow the usual standard of review for legal and factual sufficiency.[2]

The jury was instructed to measure damages by (1) the loss in value of the joint venture's interest in the property and (2) additional expenses, including taxes. The only evidence of loss in the property's value came from the joint venture's expert, Mr. Schultz, who testified to the market value in 1986 ($415,000) and in 1994 ($180,000); the jury apparently subtracted the latter from the former to reach $235,000 as loss of property value. The jury also awarded $65,000 as "additional expenses, including taxes," which was the approximate amount of taxes paid on the property during that period.

Appellants contend that there was no evidence their lien caused the property's value to drop, because (1) it was undisputed the property's value fell not because of the lien but because the overall real estate market declined[3] and (2) there was no evidence their lien prevented the property's sale during the decline. The joint venture's causation theory was that (1) the bank's lien prevented the joint venture from selling the property before the value declined and (2) the joint venture would not have been liable for taxes had the bank's lien not prevented the property's sale. That is, the bank's lien caused the venture's damages by preventing any sale of the property.

The joint venture's evidence was as follows. Nation should have listed the property for sale starting in 1986, but did not. Billy Bowman, Nation's successor, upon discovering that Nation had not listed the property, did so in 1990. Bowman claimed that the joint venture had not been able to sell the property since its 1990 listing. He did not say what its value was at any time after 1990, and he did not say how much he asked for the property. He identified only one purchase offer, from an unnamed person he never spoke to, for an undescribed fraction of the property and under unspecified price and terms, which was withdrawn when the prospective buyer learned of this litigation.

1. This is the second appeal in this cause. This Court earlier reversed a take-nothing summary judgment rendered for the bank because a fact issue existed on whether a trust existed or the bank knew of the trust. *See Hardy Rd. 13.4 Joint Venture v. Med Center Bank*, 867 S.W.2d 889, 893 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A jury trial ensued upon remand.

2. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996) (legal sufficiency); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (factual sufficiency).

3. Schultz admitted that he did not consider the bank's lien in appraising the property's market value. His appraisals assumed the property was owned free and clear. Thus, the change in value he described from 1986 to 1994 was solely due to market forces, not to the lien. Schultz did not testify to any values other than the 1986 and 1994 values.

Bowman testified the joint venture could not list the property for sale since that withdrawal, but did not say why.

### 1. 1986 to 1990

■ We find there is no evidence the lien prevented the property's sale between 1986 and 1990. The joint venture argues we should infer that Nation did not sell the property then because his illegal lien would have been discovered, which fact, in turn, demonstrates that the property could not be sold with a lien. We disagree. Nation's inaction, *i.e.*, his not selling the property in order to conceal his wrongdoing, says nothing about whether the lien would have prevented its sale. *Cf. Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998) (holding evidence legally insufficient to support finding when it is "mere circumstantial evidence" from which equally plausible but opposite inferences arise). Proof showing only impairment of vendibility does not establish a right to damages. *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 145–46 (Tex. 1982). Property is commonly sold with liens, and there is no finding in this case that the bank acted fraudulently or intentionally with Nation to do wrong. Its negligence in 1986 cannot be considered a cause for the fact that Nation made no attempt in four years to sell the property.

### 2. 1990 until Trial

■ Although the joint venture asserted a negligence claim, its actual complaint was that the bank's invalid lien clouded the property's title, preventing any sale. We have found no case determining the proper measure of damages (or causation of these damages) when a negligence claim is asserted under similar facts. Traditionally, a cause of action for damages for failure to release a purported, but not actual, property interest

is one for slander of title, not one for negligence. *See Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex.1983); *Pampell Interests, Inc. v. Wolle*, 797 S.W.2d 392, 395 (Tex.App.— Austin 1990, no writ) ("Generally, Texas recognizes two causes of action to remedy a cloud on title. First, . . . a suit to remove the cloud. . . . Second, . . . slander of title."); *Modern Exploration, Inc. v. Maddison*, 708 S.W.2d 872, 877 (Tex.App.—Corpus Christi 1986, no writ) (refusing to recognize cause of action for damages, arising from contractual or common-law duty to release acreage under terminated mineral lease, absent proof of loss of specific sale). Therefore, we conclude that we must look to and borrow from slander of title and similar cases to determine the legal standard for causation of and also for measure of damages.[4]

■ To recover damages for slander of title to real property, the plaintiff must first allege and prove loss of a specific sale. *E.g., Ellis*, 656 S.W.2d at 905. This is because the land's market or intrinsic value is normally not affected by the slander. *See id.* at 906 (Spears, J., concurring). Barring such proof, the plaintiff may not recover any damages, whether litigation expenses, interest, taxes, or otherwise. *Texas Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 304 (Tex.App.—Fort Worth 1991, writ denied).[5]

Bowman's testimony about the lost sale was as follows:

Appellee's counsel: All right. In 1990 when you took over, since 1990, have you been able to sell the property?

Bowman: No. . . .

Appellee's counsel: Why not? . . . Why have you not been able to sell the property?

---

4. We do not address the preliminary question of whether a negligence cause of action will lie under these facts. The parties have not briefed the issue, and appellants did not object to the negligence claim for this reason below.

5. Similarly, a plaintiff may not recover damages for wrongful attachment unless (1) the levy disturbed the plaintiff's use, possession, or enjoyment of the property or (2) the attachment de-

feats a pending sale of the real estate, which later depreciates in value. *See Farmers & Merchants Nat'l Bank v. Williams*, 133 Tex. 554, 129 S.W.2d 268, 269 (Tex.1939); *Olivares v. Garcia*, 127 Tex. 112, 91 S.W.2d 1059, 1061 (Tex.1936). The rationale is similar to that underlying slander of title actions. *See Bondies v. Glenn*, 119 S.W.2d 1095, 1097 (Tex.Civ.App.—Eastland 1938, writ dism'd w.o.j.).

Bowman: We listed the property, first of all, may I?

Appellee's counsel: Just tell me why.

Bowman: First of all, when we—when I examined the records, there was no indication that the property was even listed.

Appellee's counsel: Did you subsequently list it?

Bowman: Yes, we subsequently listed it with Raymond Betz. We had one inquiry, an offer on the property. We communicated to Mr. Betz that we were in litigation ...

Appellee's counsel: After you got from Mr. Betz I guess an indication that somebody was interested in the property, did you communicate with Mr. Betz?

Bowman: Yes....

Appellee's counsel: All right. When this was communicated to you, did you get a chance to explain to Mr. Betz what the circumstances were with this property?

Bowman: Yes, there was an offer for ...

Appellee's counsel: After you communicated to him what the circumstances were, what did you tell him the circumstances were with this property?

Bowman: I told him it was in litigation.

Appellee's counsel: And what happened to the offer?

Bowman: It was withdrawn.

Appellee's counsel: Have you been able to list the property since then?

Bowman: No.

Mr. Bowman later clarified that the offer was for only part of the property:

Appellants' counsel: Okay. You testified a little bit ago that—something about an offer for the property, I think you mentioned the word "offer," correct?

Bowman: There was an offer for a portion of the property.

Appellants' counsel: Did you ever speak with the person who made that offer?

Bowman: No, I did not.

Appellants' counsel: Your knowledge about that is based upon what you talked to your broker about?

Bowman: Yes, sir.

We hold this is legally insufficient evidence that the lien prevented the property's sale from 1990 until trial. The only evidence of a specific lost sale is that an unspecified buyer once offered to purchase an unspecified portion of the property for an unspecified price, but withdrew its offer after learning of the lawsuit. This does not suffice to show loss of a specific sale. *Cf. Ross v. Jarrett,* 146 S.W.2d 219, 221 (Tex.Civ.App.—Fort Worth 1940), *aff'd,* 139 Tex. 560, 164 S.W.2d 550 (Tex.1942) (in cloud of title suit, holding pleading alleging only that cloud prevented tentative sale and prevented other sales to unnamed parties could not support verdict).

We hold the evidence is legally insufficient to show that the lien caused damages and legally insufficient to show the amount of any such damages.

The joint venture's second cross-point is that the trial judge erred in excluding its expert Schultz's opinion that the bank's lien had an adverse effect on the property's marketability. We overrule this cross-point. Schultz's only excluded opinion was his appraisal of the property's 1995 value. The trial judge never excluded testimony about the lien's adverse effect on marketability; nevertheless, the joint venture did not elicit it before the jury.

Moreover, Schultz's excluded testimony did not prove a specific lost sale, nor did it show that the land was not saleable.

Counsel: Let me ask you one other question: has the litigation and the dispute over the lien in this case had an adverse impact on the marketability of the property?

Schultz: Adverse influence on the marketability of the property? Yes, I would think so.

Counsel: And what does adverse impact upon marketability mean so that the jury will understand?

Schultz: Difficulty at finding a buyer who is willing to again put up with problems related to getting clear title to property.

Counsel: Would that make it difficult to sell?

Schultz: It would affect the saleability of the property.

Counsel: Adversely?

Schultz: Adversely.

The above testimony does not say the land was unsaleable. If the lien made the land harder to sell, that would presumably lower its price, but the venture offered no evidence of what the land was worth while burdened with the lien and the litigation and none to show a lost sale at that or any other price. Because the joint venture did not prove loss of a particular sale and did not prove the land was unsaleable, there was no evidence the bank's lien caused any of the joint venture's damages.

We sustain issues two, three, six, and seven on this ground. We overrule the joint venture's cross-point two. We need not reach issue one (duty), issues four and five (charge error), issues eight and nine (prejudgment interest), or the joint venture's cross-point one on prejudgment interest.

### Cross–Points for Attorney's Fees

■ By two cross-points designated as a "cross-appeal," the joint venture claims the trial judge erred in denying its attorney's fees that the jury found reasonable and necessary.

■ Declaratory judgment was the only claim for which attorney's fees were recoverable. A declaratory judgment action may not be used solely to obtain attorney's fees that are not otherwise authorized by statute or to settle disputes already pending before a court. *See Bexar County Appraisal Review Bd. v. First Baptist Church,* 846 S.W.2d 554, 560–61 (Tex.App.—San Antonio 1993, writ denied). We follow the usual standard of review for the award or denial of attorney's fees in such a suit. *See* TEX. CIV. PRAC. &

REM.CODE ANN. § 37.009 (Vernon 1997); *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

The joint venture pled to quiet title as follows:

The Deed of Trust, subsequent renewals, extensions, modification and increases thereof and lien created thereunder *are voidable as to [the joint venture] and should be canceled by the Court.* ... Combs, acting as Med Center Bank's agent, knew or should have known, and had been placed on notice that there existed others than Nation who had ownership interest in the Property, and that Nation had no ownership in the Property. Further, Combs knew at the time the loans were made that the proceeds of the loan were to be used solely for the personal obligations of Nation. Further, the filing of the Deed of Trust and renewals, extensions, modifications and increases thereof for record *create a cloud on [the joint venture's] title to the Property that should be removed by the Court,* and caused damages to [the joint venture] for which it sues.

(Emphasis added.) Its pleading for declaratory judgment requested the following:

Med Center Bank is attempting to enforce its alleged lien notwithstanding its culpability with Nation to encumber the Property when Med Center Bank had or should have had actual or constructive knowledge of a trust on the Property, that Nation was not the owner of the Property, did not have authority to encumber the Property, that the Note and lien securing it were for personal obligations of Nation ..., that the alleged lien is conclusively presumed to have been paid, *that the lien is void ab initio and not enforceable,* and that Med Center Bank is without standing to enforce the lien. Accordingly, [the joint venture] seeks a declaratory judgment of this Court that the Deed of Trust and alleged lien imposed by Med Center Bank on the Property is invalid and/or enforcement of same barred by statute of limitations, that *such lien should be released of record by Med Center Bank, and that Med Center Bank*

*is not entitled to foreclose upon and sell the Property* to satisfy any indebtedness of Nation to Med Center Bank.

(Emphasis added.) It prayed for relief in pertinent part as follows:

1. A declaratory judgment that the Deed of Trust and Security agreement and alleged lien imposed by Med Center Bank on the property is invalid, void, void ab initio and/or enforcement of same barred by limitations, that the lien debt is conclusively presumed to have been paid, that such lien should be released of record by Med Center Bank, and that Med Center Bank is not entitled to foreclose upon and sell the property to satisfy any indebtedness of Nation to Med Center Bank.

2. An order canceling the Deed of Trust and Security Agreement and all renewals, modifications, increases or extensions thereof.

The trial judge rendered judgment (1) declaring title quieted, (2) "remov[ing], annull[ing], and h[olding] for naught" all clouds on it, and (3) declaring the lien invalid and unenforceable and precluding foreclosure.

The joint venture's declaratory judgment claim is really one to quiet title. Both claims seek to clear the property's title, are based on the same facts, and request similar relief. *Cf. Bell v. State Dept. of Highways & Pub. Transp.*, 945 S.W.2d 292, 294 (Tex.App.—Houston [1st Dist.] 1997, writ denied) (holding suit over title to land is really one for trespass to try title, regardless of form or of relief sought). Further, the joint venture did not seek to construe any terms of the lien or deed of trust. Finally, the judgment declaring the lien invalid and precluding foreclosure was sought by the joint venture under its quiet title claim and is a valid means to quiet title. *See Ellis v. Waldrop*, 656 S.W.2d 902, 903, 905 (Tex.1983) (affirming trial judge's cancellation of right of first refusal in suit to remove cloud on title or for slander of title).

Attorney's fees are not available in a suit to quiet title or to remove cloud on title. *Sadler v. Duvall*, 815 S.W.2d 285, 293–94 (Tex.App.—Texarkana 1991, writ denied). Therefore, the declaratory judgment act will not supplant a suit to quiet title by allowing attorney's fees under these circumstances. *See Barfield v. Holland*, 844 S.W.2d 759, 771 (Tex.App.—Tyler 1992, writ denied) ("[E]ven though the Uniform Declaratory Judgment Act provides a procedural device for the construction [or] validity of deeds by those whose rights are affected by such instruments, the substantive rights of the parties in this suit are governed by the Trespass to Try Title statutes . . ., which made no provision for attorney's fees"); *accord Kennesaw Life & Accident Ins. Co. v. Goss*, 694 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (trespass to try title, cloud on title).

We find *Industrial Structure & Fabrication v. Arrowhead Industrial Water, Inc.*[6] and *First National Bank at Lubbock v. John E. Mitchell Company*,[7] on which the joint venture relies, distinguishable. Although both cases allowed recovery of attorney's fees in declaratory judgment actions brought to remove cloud on title, neither case discussed the issue before us—whether the declaratory judgment action was merely a suit to quiet title in disguise, labeled a declaratory judgment action in order to obtain an award of attorney's fees. *See* 888 S.W.2d at 845; 727 S.W.2d at 363. That issue is squarely presented here. It was urged by appellees in the trial court and is urged before us on appeal. That did not happen in *Industrial Structure* or in *First National Bank*.

We hold that the trial judge did not abuse his discretion because he could have determined, as we have, that the suit for declaratory judgment was no more than a suit to quiet title, on which no attorney's fees may be awarded.

We overrule both of the joint venture's cross-points on attorney's fees.

## Conclusion

We reverse that portion of the judgment awarding the joint venture damages and pre-

---

6. 888 S.W.2d 840, 844–45 (Tex.App.—Houston [1st Dist.] 1994, no writ).

7. 727 S.W.2d 360, 363 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.).

judgment interest, and we render judgment that the joint venture take no damages or prejudgment interest. We affirm the judgment in all other respects.