Opinion filed January 24, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 24,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00120-CV 

                                                    __________

 

                                SARAH A. SMITH ET AL, Appellants

 

                                                             V.

 

           THOMAS
HENNINGTON AND JOAN HENNINGTON, Appellees

 



 

                                          On
Appeal from the 91st District Court

 

                                                        Eastland
County, Texas

 

                                             Trial
Court Cause No. CV-03-39249

 



 

                                                                   O
P I N I O N

 








Plaintiffs
Sarah A. Smith, Linda Martin, Richard Vann, Maxine Vann, Kinley Lee, and Susie
Lee brought suit against Thomas Hennington and Joan Hennington to recover
damages stemming from a dispute over approximately forty acres of real property
formerly owned by Thomas Hennington.  Thomas filed a counterclaim requesting
damages, attorney=s
fees, and a declaratory judgment invalidating the deeds to the plaintiffs and
quieting the title to the property.  The trial court found in favor of the
plaintiffs on the title issues and awarded them attorney=s fees of $2,500.  Both sides appeal:  the
plaintiffs appeal the lack of attorney=s
fees and other damages, and the defendants appeal the title issues.  We affirm.


                                                     Issues
and Standards of Review

The
plaintiffs present five issues for review.  In the first and second issues,
they argue that the trial court erred in awarding zero damages to Smith and Martin
for intentional infliction of emotional distress and mental anguish.  In the
third issue, they argue that the trial court erred in awarding zero damages to
Vann for intentional infliction of emotional distress, mental anguish, and loss
of use.  In the fourth issue, the plaintiffs contend that the trial court erred
in awarding zero damages to Lee for loss of use and enjoyment and other
expenses incurred because of the defendants=
wrongful conduct.  In their final issue, the plaintiffs contend that the trial
court erred in awarding only $2,500 in attorney=s
fees.  

The
defendants present two issues for review.  In the first issue, they challenge
the legal sufficiency of the evidence establishing the plaintiffs= superior title with
respect to Joan.  In the second issue, they challenge the legal and factual
sufficiency of the evidence establishing the plaintiffs= superior title with respect to Thomas.  

The
parties did not request findings of fact or conclusions of law following the
trial court=s
judgment.  In a nonjury trial, where no findings of fact or conclusions of law
are filed or requested, all findings necessary to support the trial court=s judgment are implied.  Holt
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992); Roberson
v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989).  A trial court=s implied findings of fact
in a bench trial have the same force and dignity as a jury=s verdict upon jury
questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991).  When, as in this case, a reporter=s
record is filed, the trial court=s
implied findings are not conclusive and may be challenged for legal and factual
sufficiency.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002).  We conduct our review of sufficiency challenges to implied
findings under the same standards of review that govern sufficiency challenges
to jury findings or a trial court=s
findings of fact.  See Roberson, 768 S.W.2d at 281.  In the absence of
findings, the judgment of the trial court must be affirmed if it can be upheld
on any available legal theory that finds support in the evidence.  Point
Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987).








To
analyze a legal sufficiency challenge, we must determine whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict
under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005).  We must review the evidence in the light most favorable to the verdict,
crediting any favorable evidence if a reasonable factfinder could and
disregarding any contrary evidence unless a reasonable factfinder could not.  Id.
at 821‑22, 827.   We may sustain a no‑evidence or legal sufficiency
challenge only when (1) the record discloses a complete absence of a vital
fact, (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact, (3) the only evidence
offered to prove a vital fact is no more that a mere scintilla, or (4) the
evidence conclusively establishes the opposite of a vital fact.  Id. at
810 (citing Robert W. Calvert, ANo
Evidence@ and AInsufficient Evidence@ Points of Error, 38 Texas L. Rev. 361, 362-63 (1960)).  

To
analyze a factual sufficiency challenge, we must consider and weigh all of the
evidence and determine whether the evidence in support of the finding is so
weak as to be clearly wrong and unjust or whether the finding is so against the
great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.
2001); Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); In re King=s Estate, 244 S.W.2d
660 (Tex. 1951).  In a bench trial, the trial court, as factfinder, is the sole
judge of the credibility of the witnesses.  Sw. Bell Media, Inc. v. Lyles,
825 S.W.2d 488, 493 (Tex. App.CHouston
[1st Dist.] 1992, writ denied). 

                                                           Defendants= Title Issues








The
record in this case shows that Smith and Martin obtained a judgment against
Thomas  in March 2000.  Thomas=s
property was levied upon and sold in satisfaction of the judgment.  On April 2,
2002, after issuing a writ of execution, the sheriff=s department conducted a sheriff=s sale of the property
surrounding Thomas=s
designated ten-acre homestead.  Smith and Martin purchased the property at the
sheriff=s sale and
obtained a sheriff=s
deed.  Smith and Martin subsequently sold some of the property to the Vanns and
some to the Lees.  In the meantime, however, Thomas=s  ex-wife, Joan, filed an affidavit in
the county clerk=s
office claiming that she had an interest in the property.  This affidavit
clouded the title to the property.  Thomas continued to claim ownership of the
property and refused to recognize any of the plaintiffs as owners.  According
to the plaintiffs, Thomas interfered with their use of the property and
harassed them.

Thomas=s Claim

Thomas
contended at trial that the sheriff=s
sale was not valid because the property was part of his homestead and was,
therefore, exempt from seizure.  Thomas argued that the property was not in the
city limits, that the property was rural rather than urban, and that he was
therefore not limited to a ten-acre homestead but was entitled to include the
property at issue in his homestead.  Thomas urges the same contentions on
appeal, relying upon Tex. Prop. Code
Ann. ' 41.001
(Vernon Supp. 2007), ''
41.002, 41.005, 41.022 (Vernon 2000).  Pursuant to Section 41.001, a homestead
may not be seized to pay  creditors=
claims unless the claim falls within a specified exception; no exception is
applicable to this case.  A homestead may be either urban or rural.  Section
41.002.  An urban homestead can be no more than ten acres of land in one or
more contiguous lots.  Section 41.002(a).  A rural homestead can be no more
than 200 acres for a family or 100 acres for a single adult and may be located
in one or more parcels.  Section 41.002(b).  A homestead is considered urban if
the property is (1) located within the limits of a municipality or its
extraterritorial jurisdiction or a platted subdivision and (2) served by police
protection, paid or volunteer fire protection, and at least three of the
following services provided by a municipality or under contract to a
municipality:  electric, natural gas, sewer, storm sewer, and water.  Section
41.002(c).  

Although
Thomas contends that the property is located outside the city limits of Ranger,
there is ample evidence indicating otherwise.  Testimony showed that, although
the property was not inside the boundaries of the original town of Ranger, the
property had been incorporated by vote into the city limits of Ranger in 1919. 
City taxes were levied and collected on the property.  Thomas paid city taxes
on the property.  There was also testimony indicating that police protection,
fire protection, electric service, city water, natural gas, drainage ditches,
and the city sewer system were either being provided to the property or were
available to the property.  Although controverted, the evidence is both legally
and factually sufficient to support the trial court=s implied findings that the property was urban
and that Thomas was limited to a ten-acre homestead.  Because the property was
not part of Thomas=s
homestead, it was not exempt from seizure.  The plaintiffs, therefore, proved
superior title through the sheriff=s
sale.  The defendants=
second issue is overruled.  








Joan=s Claim

Joan
contended at trial and contends on appeal that she has an interest in the
property because she and Thomas purchased part of the property together while
they were married and because she has not been paid for her portion of the
property.  Joan filed a declaration affidavit in the county clerk=s office.  In doing so, she
intended to put a cloud on the title in hopes that she would be paid for her
share of the property.  The record shows, however, that Joan signed a quitclaim
deed on May 11, 2001, the same day she filed for divorce from Thomas.  The
quitclaim deed conveyed any interest Joan may have had in the property to R.J.
Gardner, who was Thomas=s
biological son.  Thomas had conveyed his interest in the property to Gardner on
April 7, 2000, two weeks after the original judgment was obtained by Smith and
Martin against Thomas.  Gardner subsequently conveyed the property back to
Thomas on January 18, 2002.  Under these circumstances, the evidence is legally
sufficient to support the trial court=s
implied finding that the plaintiffs=
claim to title in the property through the sheriff=s sale was superior to Joan=s claim.  Joan forfeited
her interest in the property when she signed the quitclaim deed transferring
any interest she may have had to Gardner, who later conveyed the property back
to Thomas.  The defendants=
first issue is overruled.  

                                                              Plaintiffs= Damages

The
plaintiffs urge in their first four issues that the trial court erred in
failing to award monetary damages for intentional infliction of emotional
distress, mental anguish, loss of use and enjoyment, and other expenses that
resulted from the defendants=
wrongful conduct.  In their petition, the plaintiffs asserted that they were
entitled to monetary damages based upon the following causes of action: Aclaim for cloud on title,@ tortious interference with
a contract, intentional infliction of emotional distress, and trespass and
interference with the use and enjoyment of the property.  Smith, Martin,
Richard, and Kinley proffered testimony in support of their damages, but the
trial court did not award any such damages.  








First,
damages are not available for a cause of action for Acloud on title.@ 
Ellis v. Waldrop, 656 S.W.2d 902, 904-05 (Tex. 1983).  A suit to remove
a cloud from the title involves a specific, equitable remedy.  Id. 
Furthermore, in order to recover damages for the disparagement or slander of
title, the loss of a specific sale must be shown.  Id.  There was no
allegation that a sale was lost in this case.  We hold that the trial court=s failure to award monetary
damages based upon the cloud on the title was not erroneous.  

Next,
the trial court impliedly found that the defendants did not tortiously
interfere with a contract.  However, the plaintiffs do not challenge this
implied finding in their brief.  Consequently, we will not address any damage
issue relating to the trial court=s
failure to award damages for the defendants=
alleged tortious interference with a contract.  

With
respect to their claim for intentional infliction of emotional distress, the
plaintiffs assert that the testimony at trial established the elements of that
tort and also established that the plaintiffs suffered a variety of physical
ailments along with their mental anguish.  Smith put a value of $150,000 on her
damages.  Martin put a value of $100,000 on hers.  Richard put a value of
$25,000 on his damages for the loss of use of the property, mental anguish, and
harassment.  Kinley testified that, because of the defendants= actions, he has not been
able to build a home on the property as he had intended; he has had to pay
about $16,250 to rent a shop; and he has incurred other damages, including at
least $2,000 because he could not plant or cultivate coastal on the property.

In
order to prove a claim for intentional infliction of emotional distress, the
following elements must be shown:  (1) the defendant acted intentionally or
recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the
defendant caused the plaintiff emotional distress; and (4) the emotional
distress suffered by the plaintiff was severe.  Kroger Tex. Ltd. P=ship v. Suberu, 216
S.W.3d 788, 796 (Tex. 2006); Twyman v. Twyman, 855 S.W.2d 619 (Tex.
1993); Restatement (Second) of Torts  ' 46 (1965).  According to
Section 46, comment d, which is partially quoted in Kroger and Twyman:

[L]iability [exists]
only where the defendant=s
conduct has been extreme and outrageous.  It has not been enough that the
defendant has acted with an intent which is tortious or even criminal, or that
he has intended to inflict emotional distress, or even that his conduct has
been characterized by Amalice@. . . . Liability has been
found only where the conduct has been so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized community.








Conduct that is
merely insensitive or rude is not extreme and outrageous, nor are Amere insults, indignities,
threats, annoyances, petty oppressions, or other trivialities.@  Kroger, 216 S.W.3d
at 796 (quoting GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex.
1999)).  Whether the conduct may reasonably be regarded as so extreme and
outrageous as to permit recovery is generally a matter for the court to
determine.  GTE, 998 S.W.2d at 616.  However, where reasonable minds may
differ, it is for the factfinder to determine.  Id. 

After
reviewing the record in this case, we hold that the trial court could have
properly concluded that the defendants=
conduct was not so outrageous in character, or so extreme in degree, as to go
beyond all possible bounds of decency and be regarded as atrocious and utterly
intolerable in a civilized community.  Because the plaintiffs failed to prove
that the defendants=
conduct was extreme and outrageous, they failed to prove an essential element
of their cause of action for intentional infliction of emotional distress. 
Consequently, the plaintiffs were not entitled to damages for that cause of
action.  The plaintiffs=
first, second, third, and fourth issues are overruled.  

                                                                  Attorney=s Fees

In
their final issue, the plaintiffs assert that the trial court erred in awarding
only $2,500 in attorney=s
fees.  Plaintiffs=
counsel testified that he spent 89.5 hours working on this case and that $150
per hour was a reasonable rate.  Accordingly, he requested $13,425 in attorney=s fees.  He also sought
reimbursement for costs of $792.17.  

Attorney=s fees may be recovered
from an opposing party only when permitted by statute or by contract.  Holland
v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999).  The plaintiffs
assert that they are entitled to attorney=s
fees based upon their claims for tortious interference with a contract or upon
the declaratory nature of the case.  The plaintiffs, however, did not prevail
on their tortious interference claims.  Furthermore, no statutory or
contractual basis exists for the recovery of attorney=s fees under the plaintiffs= tortious interference
claims.








In
a declaratory judgment proceeding, the trial court may award costs and
reasonable and necessary attorney=s
fees as are equitable and just.  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  As a general rule,
the party seeking to recover attorney=s
fees has the burden of proof.  Stewart Title Guar. Co. v. Sterling, 822
S.W.2d 1, 10 (Tex. 1991).  To show that attorney=s
fees are reasonable and necessary, a plaintiff is required to show that the
fees were incurred while suing the defendant sought to be charged with the fees
on a claim which allows recovery of such fees.  Id.; see Tex. Civ. Prac. & Rem. Code Ann. '
37.004 (Vernon Supp. 2007) (authorizing declaratory relief to determine a
question of construction or validity arising under various instruments,
including a deed).  If attorney=s
fees are authorized for some, but not all, of a party=s claims, that party generally has the duty to
segregate the recoverable attorney=s
fees from the unrecoverable attorney=s
fees.  Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313-14 (Tex.
2006).  However, a party is not required to segregate attorney=s fees if Adiscrete legal services
advance both a recoverable and unrecoverable claim@ causing the fees to become Aso intertwined that they
need not be segregated.@ 
Id.

In
this case, plaintiffs=
counsel did not segregate the recoverable fees B
the fees incurred to have the plaintiffs=
deeds declared valid B
from the remaining unrecoverable fees.  We cannot hold that the counsel=s legal services provided
to advance the declaratory claims were so intertwined with the legal services
provided to advance the remaining claims as to be inseparable.  The declaratory
claims did not involve the same set of facts as the claims concerning the
defendants= conduct
and the resulting damages.  It appears from the record that a majority of the
plaintiffs= case,
including their petition and the evidence presented at trial, related to the
defendants= conduct
and the damages caused to the various plaintiffs by such conduct and, thus, did
not relate to the recoverable claims.  The plaintiffs did not need to prove the
defendants= conduct or
the harm it caused in order to show that their deeds were valid.  Because the
plaintiffs had the burden of proof and failed to segregate the attorney=s fees, we cannot hold that
the trial court erred in awarding only $2,500 for the plaintiffs= attorney=s fees.  The plaintiffs= fifth issue is overruled. 


The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

January 24, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and
Strange, J.