

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-170-CV

JAMES POAG                                                      APPELLANT AND
                                                                     APPELLEE

V.

KATHY MCCORMICK FLORIES                             APPELLEE AND
                                                                   APPELLANT

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I. Introduction

Appellant James Poag appeals the trial court's final judgment granting summary judgment in favor of Appellee Kathy McCormick Flories and dismissing his claims with prejudice. Flories cross-appeals, arguing that the trial court abused its discretion by failing to award attorneys' fees to her. We affirm.

## II. Factual and Procedural History

In February 1984, Flories's husband B.R. deeded 214.9 acres of land to Ranchoaks Joint Venture by general warranty deed. That land subsequently became Ranchoaks Addition, a development of individual residential lots that were marketed under a common scheme for mobile homes. As of January 1987, B.R. owned all of Ranchoaks Addition's mineral estate.

In May 1987, B.R. and several of his business associates, in an unrelated matter, signed a promissory note payable to the Texas American Bank/Fort Worth, N.A., a portion of which B.R. was personally liable. The note was subsequently assigned to Mike Ferguson, trustee and president of Anson Financial (Anson).

In June and October 1987, B.R. conveyed three lots in the Ranchoaks Addition to Poag by general warranty deed. All three deeds provided that they conveyed the "surface estate only."

In November 1991, B.R. died, and his will was admitted for probate. Pursuant to his will, the probate court appointed Flories as dependent administratrix and authorized her to operate B.R.'s business.

After B.R.'s death, Ferguson filed suit on behalf of Anson against B.R.'s estate and eventually obtained a judgment against the estate. Anson's claim was subsequently settled, and as consideration for the settlement, Anson agreed to purchase from B.R.'s estate several parcels of land in the Ranchoaks Addition. The

terms of the settlement agreement were set forth in a document, which did not contain the phrase "surface estate only."

After Anson's claim against B.R.'s estate was settled, Flories filed an application for sale of real property and real assets with the probate court to fulfill the terms of the settlement agreement. The probate court granted the application and ordered that the agreed upon parcels be sold at a private sale for cash. Neither the application nor the probate court's order included the phrase "surface estate only." The property sold, and on May 15, 1996, Flories filed a report of sale of real property with the probate court, which described the property sold as "surface estate only." The probate court approved and confirmed the sale of the "surface estate only" property and entered a written decree confirming the sale, which was later attached to and made a part of the administrator's deed. The administrator's deed, dated June 10, 1996, conveyed the "surface estate only" in four parcels of land to Anson and was recorded in the Tarrant County deed records on June 11, 1996.

On June 21, 1996, Anson conveyed two of the four parcels of land to Poag by "Warranty Deed with Vendor's Lien." The deed provided that the conveyance was subject to "any and all . . . reservations . . . affecting the herein described property." To secure part of the $110,000 purchase price, Poag signed and delivered a deed of trust to Anson in which Poag expressly provided that "all presently recorded . . . reservations[,] . . . oil and gas leases, [and] mineral severance[s]" were exceptions to the conveyance and warranty.

In August 1996, the probate court signed an order approving the first amended account for final settlement and declaring that all property remaining on hand after payment of the various settlements be delivered to Flories, "the person entitled to receive such property." Subsequently, the probate court closed B.R.'s estate and discharged Flories as administratrix.

In June 2005, Flories executed a mineral lease agreement, granting Antero Resources, LLP the right to develop the mineral estate on the two tracts of land conveyed to Poag by Anson in June 1996.

In January 2006, Poag filed suit against Flories, petitioning the court "pursuant to the Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, for a declaration of the invalidity of a certain document and/or claim made by . . . Flories, in order to acquire title to property in which [Poag] has an interest . . . ." Specifically, Poag prayed for a declaration that "the oil and gas lease executed by [Flories] is invalid and unenforceable, ordering it removed from the title of the properties made the subject of this litigation, and quieting title in [Poag]." Poag further alleged slander of title and reformation claims in his petition. Flories's answer (1) generally denied Poag's claims and allegations, (2) asserted various affirmative defenses, and (3) requested an award of attorneys' fees under chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

Flories filed a motion for summary judgment, arguing that there was no evidence to support Poag's declaratory judgment action or his slander of title and

4

reformation claims.  Specifically, Flories asserted that the slander of title claim failed because there was no evidence that:  1) Poag possessed the mineral estate he alleges was slandered, 2) Flories published a disparaging statement about title to the property, 3) Flories published any statement with legal malice, or 4) Flories lost a specific sale of the claimed estate, entitling Poag to special damages.  Flories further asserted that Poag's reformation claim failed because there was no evidence of any preexisting oral or written agreement between her and Poag—therefore, no privity.  In the alternative, Flories argued that Poag's claims were barred by the applicable statutes of limitations or that the evidence negated at least one essential element of each of Poag's reformation and slander of title claims.

Poag filed a response and a first amended original petition, adding an additional claim for suit to quiet title.  Flories thereafter filed a supplemental motion for summary judgment, claiming that there was no evidence that the administrator's deed was invalid or unenforceable, which is the third essential element of Poag's suit to quiet title claim.  Alternatively, Flories argued that Poag's claim was barred by the applicable statute of limitations or that the evidence negated at least one essential element of Poag's suit to quiet title claim.

In November 2007, at an evidentiary hearing on the issue of attorneys' fees, the trial court found that Flories had reasonable and necessary attorneys' fees in the amount of $115,084.07.  The trial court also took judicial notice of Flories's appellate attorneys' fees in the amount of $30,000 in the event of an appeal to this court,

5

$10,000 in the event of a petition for review to the Texas Supreme Court, and $25,000 in the event the Texas Supreme Court granted review. The trial court found, however, that Flories's pleadings did not support an award of attorneys' fees, but "[h]ad there been a counterclaim for declaratory judgment or if it [had been] appropriate to award attorney[s'] fees," then the court would have awarded them. Subsequently, the trial court entered a final judgment granting Flories's motions for summary judgment, dismissing all of Poag's claims with prejudice, and denying Flories her attorneys' fees. The trial court did not specify the grounds upon which it granted Flories's motions. Poag filed a motion for new trial and a request for leave to file discovery evidence. The day before the hearing on Poag's motion for new trial, Poag filed an amended motion for new trial and a request for leave to reopen and file additional evidence. Flories subsequently filed an objection to Poag's amended motion and a written response. After a hearing, the trial court denied Poag's amended motion. Poag thereafter appealed the trial court's final judgment as it related to the summary judgment in favor of Flories, and Flories cross-appealed based on the trial court's denial of her attorneys' fees.

In August 2008, Poag filed a notice of bankruptcy, notifying this court that he had filed for bankruptcy in federal court. This court subsequently stayed the appeal pursuant to appellate procedure rule 8.2. *See* Tex. R. App. P. 8.2. In February 2009, the bankruptcy court granted Flories relief from the bankruptcy stay, allowing her to pursue her appeal relating to attorneys' fees. Thereafter, both Flories and

6

Poag filed motions to reinstate their appeals, which this court reinstated on June 11, 2009.

## III. Poag's Appeal

In two issues, Poag asserts that the trial court erred by granting Flories's motion and supplemental motion for summary judgment because (1) his claims—suit to quiet title, slander of title, and reformation—are not barred by the applicable statutes of limitations and (2) there is summary judgment evidence raising a genuine issue of material fact as to each element of his claims. In his final issue, Poag argues that the trial court erred by denying his "First Amended Motion for New Trial and Request for Leave to Reopen and File Additional Evidence" because the additional evidence was decisive, would not have caused undue delay, and was necessary to prevent an injustice. We first address whether the trial court erred by granting Flories's motions for summary judgment.

### A. Summary Judgment

Although when both no-evidence and traditional summary judgment motions are filed we usually address the no-evidence motion first, *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004), here we will review the propriety of granting the traditional summary judgment first because it is dispositive. *See* Tex. R. App. P. 47.1; *Reynolds v. Murphy*, 188 S.W.3d 252, 258 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g), *cert. denied*, 549 U.S. 1281 (2007).

### 1. Standard of Review

7

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A movant is entitled to summary judgment on an affirmative defense if the movant conclusively proves all the elements of the affirmative defense. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). Thus, to be entitled to summary judgment based on the defense of limitations, the movant must conclusively establish the date the cause of action accrued, negate the applicability of the discovery rule if applicable in the case, and prove as a matter of law that the non-movant's claim is time-barred. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Lerner v. First Commerce Bank*, 302 S.W.3d 16, 18 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## 2. Applicable Statutes of Limitations

### a. Suit to Quiet Title

An equitable suit to quiet title is not subject to limitations if a deed is void. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). If a deed is voidable, however, then the four-year statute of limitations controls. *See id.* (noting that when a deed is merely voidable, equity will not intervene because claimant has an adequate remedy at law); *see also Slaughter v. Qualls*, 139 Tex. 340, 345, 162 S.W.2d 671, 674 (1942) (stating that four-year statute of limitations applies to deeds that are voidable).

The question of whether a deed is void or voidable depends on its effect upon the title at the time it was executed and delivered. *Slaughter*, 162 S.W.2d at 674. A void deed is without vitality or legal effect. *Id.* at 676. A voidable deed on the other hand "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." *Id.*

Here, Poag alleged that the language in the administrator's deed, "surface estate only," was "not the intent of the document" and "was a fraud on the creditors of the Estate." He further alleged that the failure of the administrator's deed to evidence the true intent of the parties was due to a mutual mistake or a "unilateral mistake by one party together with the fraud or other inequitable conduct by [Flories]." Because deeds obtained by fraud or mutual mistake are voidable rather than void, and because unilateral mistake does not apply to the facts of this case, the administrator's deed at issue here is voidable. Therefore, the four-year statute of limitations applies. *See Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976) (holding that deeds obtained by fraud are voidable and remain effective until set aside); *see also Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (stating that when parties to an agreement have contracted under a mutual misconception of material fact, the agreement is voidable under the doctrine of mutual mistake); *Zapatero v. Canales*, 730 S.W.2d 111, 114 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (declaring that a party cannot claim unilateral mistake concerning outstanding mineral interest because interest was fully described in deed records).

9

### b. Suit for Reformation and Slander of Title

The four-year statute of limitations also governs a suit for reformation. *See Brown v. Havard*, 593 S.W.2d 939, 947 (Tex. 1980) (applying four-year statute of limitations to reformation suit). The two-year statute of limitations governs a claim for slander of title. Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2009); *see Kidd v. Hoggett*, 331 S.W.2d 515, 520 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) (applying two-year statute of limitations to claim for slander of title).

### 3. Discussion

In general, a cause of action accrues and limitations begin running when a wrongful act causes a legal injury. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Here, Poag claims that the wrongful act occurred in June 1996 when the administrator's deed, which conveyed four parcels of land from Flories to Anson, was recorded in the Tarrant County deed records as a conveyance of "surface estate only." Thus, Poag's slander of title, reformation, and suit to quiet title causes of actions filed in 2006 are clearly barred by the applicable two- and four-year statutes of limitations. Poag, however, argues that the discovery rule applies to his claims. We disagree.

The discovery rule defers the accrual of a cause of action until the plaintiff knows, or by exercising reasonable diligence, should know of the facts giving rise to the claim. *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006). For the

10

discovery rule to apply, the injury must be inherently undiscoverable and objectively verifiable. *Id.* at 312. An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

Here, the conveyance Poag attacks occurred in 1996 between Flories and Anson. The conveyancing document—the administrator's deed—was recorded in the Tarrant County deed records on June 11, 1996, and conveyed the "surface estate only" in four parcels of land from Flories to Anson. On June 21, 1996, Anson conveyed two of those four parcels of land to Poag. Poag took the conveyance subject to "any and all . . . reservations . . . affecting the herein described property." Poag also signed and delivered a deed of trust to Anson in which he expressly provided that "all presently recorded . . . reservations[,] . . . oil and gas leases, [and] mineral severance[s]" were exceptions to the conveyance and warranty.

The recording of the administrator's deed on June 11, 1996, charged Poag with notice that Anson only possessed the surface estate, thereby commencing Poag's two- and four-year period of limitations to file an action to set the administrator's deed aside. *See Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) (stating that a person is charged with constructive knowledge of the actual knowledge that one could gain by an examination of the public records); *see also Hoerster v. Wilke*, 138 Tex 263, 265–67, 158 S.W.2d 288, 289–90 (1942) (holding

11

that suit to set aside fraudulent conveyance accrues when the fraud is or could be discovered by the exercise of reasonable diligence).

Moreover, although Poag presents some evidence of fraud or mutual mistake in the conveyance between Flories and Anson, at most this would toll limitations as to Anson, not as to a third party. *See, e.g., Simmons v. Simmons*, No. 05-00-00460-CV, 2001 WL 301472, at *2 (Tex. App.—Dallas Mar. 29, 2001, pet. denied) (not designated for publication) (concluding appellant, as a third party, was not entitled to the tolling of limitations on his cause of action because evidence did not support tolling for a third party).[1] Poag has presented no evidence of any circumstances that would raise a fact issue concerning the tolling of the statute of limitations as to him (as opposed to Anson). *Id.* Thus, Poag's limitations period on his claims expired in June 1998 and June 2000. Poag's suit filed in 2006 is barred by the applicable statutes of limitations. Consequently, the trial court did not err by granting Flories's motions for summary judgment on the affirmative defense of limitations. We therefore overrule Poag's first issue. Having determined that summary judgment was proper on this ground, we need not reach Poag's second issue, complaining

---

[1] We note that even Anson would be hard pressed to argue fraud or mutual mistake ten years after the fact when the recorded deed expressly stated "surface estate only." *See Veterans Land Bd. v. Lesley*, 281 S.W.3d 602, 624–25 (Tex. App.—Eastland 2009, pet. filed) (concluding alleged mutual mistakes of fact in grantors' deeds to grantee were mistakes so plainly evident that limitations on grantors' claim to reform such deeds was not tolled under the discovery rule, as the deeds were not ambiguous and grantors should have known of the alleged mistakes when the deeds were executed).

12

that the trial court erred by granting Flories's motions for summary judgment on the basis of no evidence. *See* Tex. R. App. P. 47.1.

## B. Request for Leave to Reopen

In Poag's third issue, he argues that the trial court erred by denying his request to reopen the case and file additional evidence. The evidence that Poag sought to offer was: (1) excerpts from his deposition testimony, (2) an affidavit in which he discusses both the contract he entered into with Anson and the Title Policy he received on the two tracts of land at issue, and (3) an actual copy of the Title Policy.

We review the denial of a motion to reopen the evidence under an abuse of discretion standard. *Hernandez v. Lautensack*, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied). Texas Rule of Civil Procedure 270 provides that a trial court may permit additional evidence to be offered at any time when it clearly appears necessary to the administration of justice. Tex. R. Civ. P. 270. Rule 270 allows, but does not require, a trial court to permit additional evidence. *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 2001, no pet.). In determining whether to permit additional evidence, a court should consider whether (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause injustice. *Hernandez*, 201 S.W.3d at 779. The decision to reopen is within the trial court's sound discretion. *Id.* "[A] trial

13

court does not abuse its discretion by refusing to reopen a case after evidence is closed if the party seeking to reopen has not shown diligence in attempting to produce the evidence in a timely fashion." *Lopez*, 55 S.W.3d at 201 (citing *Estrello v. Elboar*, 965 S.W.2d 754, 759 (Tex. App.—Fort Worth 1998, no pet.)); *see Hernandez*, 201 S.W.3d at 779.

Here, Poag does not address the question of diligence in his brief. After an independent review, we can find nothing in the record showing that Poag was diligent in attempting to produce the additional evidence in a timely fashion. On the contrary, the record shows that Poag's deposition testimony was taken more than a year before the trial court entered its final judgment. There is also evidence that Poag provided Flories with a copy of the Title Policy eight months prior to the entry of final judgment. Finally, Poag's affidavit is not based on new testimony or newly discovered evidence. The trial court could have reasonably concluded, on this record, that Poag's desire to offer additional evidence was related to the trial court's ruling in its final judgment. Under these circumstances, "the interests of justice do not warrant a second bite at the apple." *Estrello*, 965 S.W.2d at 759; *see Hernandez*, 201 S.W.3d at 779 (concluding appellant failed to show he was diligent in attempting to produce evidence when he had opportunity to put on evidence before trial court closed evidentiary phase of trial). Therefore, the trial court did not abuse its discretion by denying Poag's request to reopen and file additional evidence. Accordingly, we overrule Poag's third issue.

14

## IV. Flories's Cross-Appeal

In her sole issue on cross-appeal, Flories argues that the trial court abused its discretion by refusing to award her "her attorneys' fees based upon its mistaken belief that Flories's pleadings do not support an award of attorneys' fees even though it found that her attorneys' fees were necessary, reasonable, and just."  In support of her argument, Flories points out that "Poag invoked the Uniform Declaratory Judgments Act (the UDJA) in his Original and First Amended Petitions and sought attorneys' fees under the UDJA, section 37.009 of the Texas Civil Practice and Remedies Code."

In a proceeding under the UDJA, a court may award "reasonable and necessary attorney[s'] fees as are equitable and just."  Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008).  A trial court's award of attorneys' fees under the UDJA is reviewed for an abuse of discretion.  *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998).

A declaration under the UDJA is appropriate "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 2008). However, a party may not recover attorneys' fees under the UDJA when the only issues, aside from attorneys' fees, concern clearing of title or trespass to try title.  *AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 588 (Tex. App.—Dallas 2008, no pet.); *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 956 (Tex.

15

App.—Houston [1st Dist.] 1998, pet. denied). "Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form." *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied). Because a claim for declaratory relief is "merely incidental to the title issues," the UDJA will not supplant a suit to quiet title by allowing attorneys' fees under such circumstances. *Id.* (quoting *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002)); *Sw. Guar. Trust*, 981 S.W.2d at 957.

Here, Poag brought a declaratory action seeking to "quiet title and/or acquire title to property." In his prayer, Poag sought a judgment "[d]eclaring that the oil and gas lease executed by Defendant [Flories] is invalid and unenforceable, ordering it removed from the title of the properties made the subject of this litigation, and quieting title in [Poag]".

In substance, Poag's claim for declaratory relief is a claim to quiet title. Although Poag couches his declaratory action in terms of a request for a declaration, everything he requests of the court is necessary to, and a component of, the ultimate relief he seeks, which is to clear the title on the two tracts of land he purchased from Anson. When the essence of the suit is in trespass to try title, attorneys' fees are not recoverable. *Hawk*, 107 S.W.3d at 84; *see Sw. Guar.*, 981 S.W.2d at 957. Thus, as a matter of law, Flories was not entitled to an award of attorneys' fees under the UDJA. *See Sani v. Powell*, 153 S.W.3d 736, 746 (Tex. App.—Dallas 2005, pet. denied) (concluding cross-appellant was not entitled to an award of attorney's fees

16

under the UDJA when cross-appellant's claim for declaratory relief was in substance a claim to quiet title). Accordingly, the trial court did not abuse its discretion by refusing to award Flories her attorneys' fees. We overrule Flories's sole issue on cross-appeal.

## V. Conclusion

Having overruled Poag's dispositive issues and having overruled Flories's sole cross-issue, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE


PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: July 1, 2010