# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-12-00691-CV

**Grace Shamel and Stephen Shamel, Appellants**

**v.**

**Specialized Loan Servicing, LLC; Deutsche Bank National Trust Company,
as Indenture Trustee of the Arch Bay Asset-Backed Securities Trust 2010-2,
by its Attorney-in-Fact and Servicer-in-Fact; Specialized Loan Servicing, LLC;
Mortgage Electronic Registration Systems, Inc.; Clauklin LLC; and
Capital City Relocation, LLC,[1] Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-11-002698, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated August 29, 2014, and substitute the

following opinion and judgment in their place. Appellants' motion for rehearing is denied.

Grace Shamel and Stephen Shamel appeal from a summary judgment in favor of

Clauklin LLC and Capital City Relocation, LLC on the Shamels' declaratory judgment claim seeking

to invalidate the foreclosure sale of certain real property. The Shamels assert that the foreclosure

---

[1] Clauklin and Capital City Relocation informed this Court of their settlement with the
Shamels and did not file an appellees' brief.

sale was void because it violated an automatic stay and that the foreclosure was accomplished by an entity that lacked standing to do so. We will affirm the district court's judgment.

## BACKGROUND

In 2008, Stephen Shamel took a $296,000 home-equity loan from CitiMortgage, Inc. As part of this transaction, Grace Shamel and Stephen Shamel executed a Texas Home Equity Security Instrument securing the Texas Home Equity Note that Stephen signed. The note and security instrument were filed in the Travis County real property records. Both documents identified CitiMortgage, Inc. as the "Lender." The security instrument identified Mortgage Electronic Registration Systems (MERS)—the nominee for the Lender (CitiMortgage) and its successors and assigns—and MERS's successors and assigns, as the beneficiary.[2] The security instrument specified that MERS had the right to exercise any or all of the interests that the Shamels granted in the security instrument, including the right to foreclose and sell the property and to take any of the Lender's required actions. MERS ("as nominee for CitiMortgage") later assigned the note and security instrument to Arch Bay Holdings, LLC-Series 2009A (Arch Bay I). The note

---

[2] The MERS system is "an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009); *see also Campbell v. Mortgage Elec. Registration Sys.*, No. 03-11-00429-CV, 2012 Tex. App. LEXIS 4030, at *13 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.). When, as here, the deed of trust names MERS as the nominee for the lender and its successors and assigns and the deed of trust is recorded in the local real property records with MERS as the named beneficiary, MERS remains the mortgagee of record if the note is transferred between MERS members, and there is no requirement that the deed of trust be re-recorded every time it is transferred. *Campbell*, 2012 Tex. App. LEXIS 4030, at *13.

2

was endorsed by CitiMortgage to Arch Bay I, and the assignment was filed in the Travis County real property records.

The Shamels defaulted on their loan in 2009 by failing to make the required payments. Arch Bay I filed suit in 2010 with their application for an expedited order of foreclosure. *See* Tex. R. Civ. P. 736. Arch Bay I then assigned the note and security instrument to Arch Bay Asset-Backed Securities Trust 2010-2 (Arch Bay II) in March 2011. The note was endorsed by Arch Bay I to Arch Bay II, and the assignment was recorded in the Travis County real property records.

The district court signed an order in April 2011 authorizing foreclosure to proceed against the Shamels. *See id*. The order granted the application for expedited foreclosure that Arch Bay I had filed before its assignment of the note and security instrument to Arch Bay II. Over four months later, the Shamels filed the underlying suit seeking injunctive relief to halt the foreclosure. They obtained a temporary restraining order that thereafter expired by its own terms, and no hearing was held on their request for a temporary injunction. Thereafter, following notice to the Shamels and their counsel, the trustee under the security agreement foreclosed on the property, which Clauklin LLC and Capital City Relocation, LLC purchased. The substitute trustee's deed stated that the Shamels defaulted in their payments on the note, that the foreclosure order was signed, that notice of the sale was properly posted and served, that the sale was held at the Travis County Courthouse during the time provided in the substitute trustee's notice of sale, and that the substitute trustee conveyed the property to Clauklin LLC and Capital City Relocation, LLC in exchange for payment of the purchase price. The substitute trustee's deed reflecting Clauklin LLC and Capital City Relocation, LLC's title to the property was filed in the Travis County real property records.

Clauklin LLC and Capital City Relocation, LLC (Intervenors) intervened in the Shamels' suit, asserting a counterclaim for trespass to try title and seeking declarations that the substitute trustee's deed was valid and that Intervenors are the sole rightful owners of the property.[3] Thereafter, Intervenors filed traditional and no-evidence motions for summary judgment. The Shamels filed a response but presented no evidence in support of it and did not object to any of the Intervenors' summary judgment evidence. The Intervenors filed a reply challenging the Shamels' argument that the foreclosure order was void because it preceded the assignment from Arch Bay I to Arch Bay II.

After a hearing, the district court granted Intervenors' traditional and no-evidence motions for summary judgment, specifying four bases for its ruling:

1. Movants have demonstrated that, as a matter of law, Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), the original beneficiary under the Security Instrument, had authority to assign the Security Instrument. Alternatively, Plaintiffs have offered no evidence in support of their allegation that MERS lacked authority to assign the Security Instrument.

2. Movants have demonstrated that, as a matter of law, the Note and Security Instrument remained valid upon their transfer from MERS to Arch Bay Holdings, LLC - Series 2009A (hereinafter "Arch Bay I"). Alternatively, Plaintiffs have offered no evidence in support of their allegation that the Note and Security Instrument were rendered invalid upon their transfer from MERS to Arch Bay I.

3. Movants have demonstrated that, as a matter of law, Arch Bay I transferred and assigned the Note and Security Instrument to Arch Bay Asset-Backed Securities Trust 2010-2 (hereinafter "Arch Bay II"). Accordingly, the Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale issued on 28 April 2011 in Cause No. D-1-GN-10-003746, which granted the Application for Expedited

---

[3] The Intervenors' additional counterclaims for unpaid rent and restitution were dismissed in the district court's final judgment.

4

Foreclosure Proceedings filed by Arch Bay I, also granted foreclosure authority to Arch Bay II, as assignee of Arch Bay I.

4. Movants purchased the Property at the Travis County foreclosure auction on 3 April 2012 and were issued a Substitute Trustee's Deed granting them legal title to the Property. Because Defendant Deutsche Bank National Trust Company, as Indenture Trustee of Arch Bay II, had authority to foreclose the Security Instrument and authorize the April 3rd sale of the Property, Movants are entitled to a declaration that the Substitute Trustee's Deed is valid and that they are the sole owners of the Property.

This appeal followed.

## DISCUSSION

In five issues, the Shamels challenge the summary judgment arguing that the foreclosure sale was void because it violated an automatic stay and that the foreclosure was accomplished by Arch Bay II, which lacked standing to do so.

### *Standard of review*

The district court granted both the no-evidence and traditional summary judgment motions. *See* Tex. R. Civ. P. 166a(c), (i). We usually review the trial court's judgment under the no-evidence standard first and proceed to review the traditional summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166(a)(i). Here, we address the district court's ruling on the traditional summary judgment first because it is dispositive. *See Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied); *see also* Tex. R. App. P. 47.1 (requiring "written opinion that is as brief as practicable," addressing all issues that are raised and necessary to final disposition).

We review a trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. In reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving doubt in favor of the non-movant. *Knott*, 128 S.W.3d at 216. When, as here, a trial court expressly bases its summary judgment on certain grounds, we consider all of the grounds on which the trial court ruled that are preserved for our review and necessary to dispose of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). We may also consider in the interest of judicial economy the summary judgment grounds that the trial court did not rule on, but here, we need not do so. *Id.*

### *Foreclosure sale was not void*

In their first issue, the Shamels assert that the foreclosure sale was void because it violated an automatic stay of proceedings under the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 736.11(a), (d). Rule 736.11 applies only to "proceedings filed on or after January 1, 2012." *See* 75 Tex. B.J. 63, 66 (2012). Because the Shamels' suit was filed on August 31, 2011, before the effective date of the rule, it does not apply here. *See id.* We overrule the Shamels' first issue.[4]

---

[4] The Shamels argue—for the first time on rehearing—that even if the foreclosure sale was not void, they were entitled to an abatement and dismissal of the proceedings under former Texas Rule of Civil Procedure 736(9). *See* 61 Tex. B.J. 226, 228 (1998, amended 2011). This issue is waived. *See* Tex. R. App. P. 33.1(a).

6

*Arch Bay II's standing to foreclose*

In their four remaining issues, the Shamels assert that Arch Bay II lacked standing to foreclose.[5]  Specifically, the Shamels contend that because Arch Bay I assigned the Shamels' note and security instrument to Arch Bay II before the district court issued its order authorizing foreclosure, Arch Bay I could not transfer a right to foreclose to Arch Bay II.  The Shamels also assert that the court's order authorized Arch Bay I to conduct the foreclosure, not Arch Bay II.

The Intervenors' unobjected-to summary judgment evidence—which includes the Travis County District Clerk's file-stamped copies of Stephen Shamel's note to CitiMortgage, the Shamels' security instrument to CitiMortgage, the assignment from MERS (as nominee for CitiMortgage) to Arch Bay I, and the subsequent assignment from Arch Bay I to Arch Bay II—refutes the Shamels' arguments.  The second assignment states that Arch Bay I assigns the Shamels'"mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon" to Arch Bay II.  We conclude that this document unambiguously expresses the parties' intent that Arch Bay II acquire all of the rights derived from the Shamels' note and security instrument that Arch Bay I acquired in the past (from CitiMortgage as the original lender), along with all of the rights that would accrue to Arch Bay I in the future.  Thus, when the district court signed the order authorizing Arch Bay I to proceed with foreclosure against the property after the Shamels' uncured default, Arch Bay II was authorized to foreclose as Arch Bay I's assignee.  Under Texas law, an assignee, including the assignee of a promissory note, "stands in the shoes of

---

[5] The Shamels did not challenge the expedited foreclosure order or its findings that they had defaulted and that requisite notices of default and acceleration were provided.  On appeal, they do not challenge the assignments from MERS to Arch Bay I or from Arch Bay I to Arch Bay II.

his assignor" and "receives the full rights of the assignor." *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994).

The Shamels mistakenly rely on *A Plus Investments, Inc. v. Rushton* for their assertion that Arch Bay II had no right to foreclose when the court's order named only Arch Bay I. *See* No. 02-03-00174-CV, 2004 Tex. App. LEXIS 3605 (Tex. App.—Fort Worth Apr. 22, 2004, no pet.) (mem. op.). In *A Plus*, the Rushtons defaulted under a home equity security instrument with Associates Financial Services Company of Texas, and Associates obtained a court order authorizing foreclosure. *Id*. at *2. Associates' purported successor, CitiFinancial, Inc., appointed a substitute trustee who conducted a foreclosure sale. *Id*. at *3. A Plus Investments purchased the property at the foreclosure sale and prevailed on a subsequent forcible detainer action to evict the Rushtons. *Id*. The Rushtons eventually filed suit in district court challenging A Plus's title to the property based on the discrepancy between the order naming Associates and the sale conducted by CitiFinancial. *Id*. In support of its asserted right to possession of the property, A Plus produced only: (1) the home equity security instrument between the Rushtons and Associates; (2) the foreclosure sale deed naming Citi Financial as the foreclosure sale beneficiary; and (3) the district court's order authorizing Associates to foreclose on the property. *Id*. at *5. The Fort Worth Court noted that there was "no evidence in the record to support a link between Associates and CitiFinancial," and held that "[t]his failure to connect the dots is fatal to A Plus's case." *Id*.

However, there is no such failure of evidence here. *See Reagan v. NPOT Partners I, LP*, No. 06-08-00071-CV, 2009 Tex. App. LEXIS 2045, at *10 (Tex. App.—Texarkana Mar. 25, 2009, pet. dism'd w.o.j.) (mem. op.) (distinguishing *A Plus* by concluding that case under review contained no such conflict in chain of title). Under the express terms of the assignment, Arch Bay

8

II received (and thereafter had authority to exercise) all of the rights related to the note or security agreement that belonged to Arch Bay I, including "any rights . . . to become due." That necessarily included the right to foreclose granted in the district court's order signed after the Arch Bay I-Arch Bay II assignment.

The Shamels' assertion that Arch Bay II had no right to foreclose is not supported by this record; rather, the record shows that Intervenors met their burden of producing summary judgment evidence showing that there were no disputed issues of material fact and that they were entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. We overrule the Shamels' remaining issues.[6]

## CONCLUSION

Having overruled all the Shamels' issues, we affirm the district court's judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed on Rehearing

Filed: October 2, 2014

_____

[6] Because we have concluded that the express terms of the assignment from Arch Bay I to Arch Bay II also transferred the right to foreclose eventually granted to Arch Bay I, we need not reach the Shamels' other issues asserting that Arch Bay I: (1) divested itself of standing and deprived the district court of jurisdiction by transferring rights to a note and security instrument before the court's order authorizing foreclosure; and (2) failed to inform the district court of the divestiture of those rights and thereby voided any claim of right. *See* Tex. R. App. P. 47.1.

9