

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00319-CV

### IN THE INTEREST OF E.G.M.

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 20-0604-CV-C
Honorable William D. Old III, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: April 17, 2024

AFFIRMED

Mother[1] appeals from the trial court's order designating Father as the person with the exclusive right to designate E.G.M.'s primary residence and receive child support. On appeal, Mother argues the trial court abused its discretion in reopening evidence, admitting evidence for impeachment purposes, and granting Father's motion for reconsideration. We affirm.

### BACKGROUND

Father began the underlying suit by filing a petition for divorce and requesting to be named the person with the exclusive right to designate E.G.M.'s primary residence. By the time of trial, the parties had entered into a mediated settlement agreement that they were not common-law

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d).

married and had never been formally married. Thus, at the time of trial, the only issue in dispute was which party should be given the exclusive right to designate the primary residence of E.G.M. and receive child support. On December 2, 2021, trial began and each party called multiple witnesses. At the close of trial, the trial court stated its intent to designate Mother and Father as joint managing conservators and Mother as the person with the exclusive right to designate the primary residence. The trial court explained that child support for Father would be "calculated based on a two-year average with one child before the court," and not based on two children before the court.

On December 20, 2021, Father filed a Motion to Reopen Evidence and to Reconsider Ruling, requesting that (1) the trial court allow him to reopen the evidence to present additional evidence relevant to the issue of best interest of child and (2) the trial court reconsider its ruling. In his motion, Father pointed to evidence presented by Mother at trial that she was involved in a stable and committed relationship with her boyfriend B.J. However, according to the motion, within twenty-four hours of the trial court's ruling, Mother was with a new love interest and had, contrary to her representation to the trial court, ended her relationship with B.J. Father argued that Mother had misrepresented her relationship with B.J. to the trial court. Father argued that this evidence was relevant to the best interest of the child, that he had been diligent in obtaining evidence, and that he could not have known before trial that Mother had ended her relationship with B.J. or had a new love interest. Father pointed out that Mother had been in Florida with B.J. "shortly before trial on the merits," had testified at trial that she was in a current and stable relationship with B.J., had testified she and B.J. cohabitated, had testified the child had known B.J. for a long time, and had never mentioned the new love interest. Father argued that Mother's misrepresentations at trial were relevant to the best interest of the child because Mother had represented to the court that her relationship with B.J. was more stable than Father's relationships

post-separation. Father argued that this evidence "may be decisive in that the [trial court] acknowledged that the decision in appointing [Mother] as the primary conservator of the child was a close call as between the parents."

On January 11, 2022, Mother filed a response to the motion, and on February 1, 2022, the trial court held a hearing on the motion. At the hearing, Mother testified she had represented to the trial court that she was in a stable relationship with her boyfriend B.J., that she had known B.J. a long time before they cohabitated, and that B.J. therefore knew the child before he moved in with Mother. When asked when she had started dating her new love interest, Cody, Mother replied that she and Cody "were just talking" and "it was never like an official thing." Mother admitted that a social media post depicted her and Cody on a "party bus" on December 3, 2021, which was the day after trial. Mother testified she and Cody "took all the kids[2] to–to go see the Christmas lights." A copy of the social media post was admitted in evidence. The post depicts Mother and Cody sitting inside the bus, and there is the following notation: "best night ever with the two love birds." Mother testified she and Cody were the two love birds. When asked if E.G.M. was sitting on Cody's lap in the picture, Mother replied, "She [E.G.M.] was not sitting on Cody []'s lap. She was sitting on my lap; however, it does kind of look like she was." Mother denied that it was her and Cody's first date, explaining that she has "always hung out with Cody."

Other exhibits were admitted of Mother's social media posts on Facebook and Instagram. The posts were of pictures taken after trial of Mother and Cody together. Some of the posts depict Christmas Day 2021, which was twenty-two days after trial. The Christmas posts depict Mother, E.G.M., Cody, and her son in matching pajamas on Christmas Day. Mother testified they were opening presents. When asked whether she was still in a relationship with B.J., Mother testified

---

[2]In addition to E.G.M., Mother has a son who is not related to Father.

that she was single. Mother was then asked how long she had been single. Mother replied, "It's been a while. I think me [sic] and Cody only talked for a little bit and then I told him I didn't want nothing because I'm going through this court situation and so . . . ." Mother's answer was interrupted, and she was asked whether she had stopped seeing Cody after Father filed his motion to reopen the evidence. Mother replied, "No." When asked when she stopped seeing Cody, she answered that she did not know the exact day and that they were "still friends." She testified that she and Cody were not dating and that he was not her boyfriend. When asked whether Cody had spent the night at her house when E.G.M. was present, Mother replied, "As far as I know, I don't believe so. I think every time he stayed it was whenever she was with her dad." When asked whether it was good judgment on her part to introduce E.G.M. to a new boyfriend, Mother was adamant that Cody was not "like a new boyfriend," because E.G.M. has known Cody.

Mother was then asked when she and B.J. ended their relationship. "I don't know the exact day. And it wasn't necessarily like just a breakup. It was like, hey, look, let's do what we want to do right now. We have a lot going on, and that was that." Mother admitted that on the Sunday following trial, she had told Father that she and Cody "were talking." According to Mother, "talking" "means that we're just hanging out, [and] seeing whether things go," but it was "not a relationship." Mother admitted that Cody posted on social media that they were in a relationship, "and it got accepted and then [Mother] deleted it right after because [they were not] in a relationship." Mother testified that B.J. was still part of her children's lives. "At the time of trial, . . . I asked you if you were in a dating relationship and you answered, 'yes,' was that a true statement?" "Yes, ma'am." "Were you and B.J. . . . on the day of trial in a relationship?" "Yes, ma'am." Mother testified she and B.J. have been "on and off" and there is still hope for that relationship.

On cross-examination, Mother was asked whether the picture that had been admitted in evidence, which depicted her, Cody, and the children in matching pajamas, was a family tradition. Mother replied, "I just—yes. I love doing matching pajamas. I did it with [Father]. I just like doing matching pajamas." Mother testified she bought them a couple of days before Christmas. Mother was then asked why Cody was included in the picture if she and he were "just talking." Mother replied, "Because we—I bought stuff for his kid on Christmas, and I just thought we should all just do it all together." With respect to B.J., Mother testified that B.J. was still on the lease of her home. She was then asked the status of her relationships with B.J. and Cody. She replied, "Me and B.J. are just—we're talking and seeing where things go. We're just working on things. Me and Cody, we're just friends. We're not doing anything other than that."

At the end of her testimony, the trial court asked Mother when B.J. had moved out of her apartment. Mother replied, "I don't know the exact date. I mean, he still has some stuff here, so technically he hasn't completely moved out, but he has been staying with his mom." The trial court then asked when B.J. started staying with his mom. Mother replied, "I'm trying to think. I know it was—I think it was the beginning of December that he—that he started staying over there. I don't know the exact date." The trial court then stated:

> So, we had a hearing, and you represented to the Court that you were in a stable relationship and then within, say, 48 hours he moved out and your relationship was no longer stable, and you were dating someone else? And he was spending the night, is that right?

Mother replied, "I wasn't dating anyone, but, yes, sir, like we were just talking." The trial court then stated, "You made misrepresentations to the Court." Mother answered, "Yes, sir."

Father then testified that at the time of trial, he believed Mother and B.J. "were in a stable relationship." He testified there had been no indication Mother and B.J. were no longer together, and Mother and B.J. had just been in Florida together the month before trial began. Father testified

that a day or two after trial, he saw the social media posts about her and Cody. He testified that E.G.M then told him about Mother's "new boyfriend Cody." Father further testified that on December 11, 2021, when he dropped off E.G.M. at Mother's home, he was told by Mother that she was "with Cody now."

> The trial court then took the matter under advisement and stated,

> I believe that my prior ruling was based largely on the stability of the mother, and that appears to have been misrepresented, so I'm going to be looking at the prior testimony in that regard, and we will go from there.

On February 8, 2022, the trial court sent the parties a letter, which stated the following:

> The Court has reviewed the original transcript of the ruling. The Court based its decision in the [sic] large part due to the stability of the parents. It now clearly appears that Respondent Mother purposefully misrepresented her relationship with her then boyfriend. Based upon the testimony at the hearing on February 1, 2022, clearly the mother lacks stability and may have committed perjury.

The trial court indicated that it intended to grant the motion to reconsider and name Father as the parent with the exclusive right to designate the primary residence of the child and receive child support. The trial court requested the parties to draft an order for its review. On March 17, 2022, the trial court signed a Final Order in Suit Affecting Parent-Child Relationship, noting that it had heard the case on December 2, 2021 and February 1, 2022. The trial court's order appointed Mother and Father as joint managing conservators and named Father as the parent with the exclusive right to designate the primary residence of E.G.M. Mother was ordered to pay child support in the amount of $450.00 per month.

On March 15, 2022, Mother filed a Motion for Reconsideration and Motion to Modify, Correct, and Reform Judgment. On April 12, 2022, Father filed a response to the motion for reconsideration. On April 13, 2022, the trial court held a hearing on Mother's motion for reconsideration. The trial court granted the motion in part by reducing Mother's child support to $382 per month. On April 25, 2022, the trial court signed a Reformed Final Order in Suit Affecting

Parent-Child Relationship. Father was still named the party as the exclusive right to designate the primary residence of E.G.M. Mother was ordered to pay $382.50 per month in child support. Mother appealed.

## MOTION FOR RECONSIDERATION

In her first issue, Mother argues that the trial court abused its discretion in reopening the evidence, admitting evidence for impeachment purposes, and granting Father's motion for reconsideration. Texas Rule of Civil Procedure provides that "[w]hen it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." TEX. R. CIV. P. 270. In determining whether to permit additional evidence, a court should consider whether: (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause injustice. *In re B.J.M.*, No. 04-14-00300-CV, 2015 WL 1244804, at *2 (Tex. App.—San Antonio 2015, no pet.); *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied). "Whether to reopen the evidence is within the sound discretion of the trial court, and the court should *exercise its discretion liberally* in the interest of permitting both sides to fully develop the case in the interest of justice." *In re R.H.B.*, 660 S.W.3d 136, 156 (Tex. App.—San Antonio 2022, no pet.) (citation omitted) (emphasis added); *see also Naguib v. Naguib*, 137 S.W.3d 367, 372 (Tex. App.—Dallas 2004, pet. denied) ("A trial court should exercise its discretion liberally in the interest of justice so that both parties are permitted to fully develop their case."). Given this broad discretion granted to the trial court, this court has noted that it has found "no authority holding that a trial court abuses its discretion by reopening the evidence [even] in the absence of [the above] factors." *In re R.H.B.*, 660 S.W.3d at 156.

First, Mother argues that Father did not show due diligence because Father was aware of B.J.'s relationship with her before trial and could have called B.J. as a witness at trial for the purpose of cross-examining him about his relationship with Mother. In response, Father argues that Mother "points to no evidence in the record that [Father] questioned the relationship status between her and [B.J.] as being over prior to trial." Father further contends that Mother "injected her relationship, and her children's relationship, with [B.J.] into the trial [by] portraying it as loving, caring, and in the present." Father emphasizes that the record reflects he only discovered Mother's testimony about her relationship with B.J. was false very shortly after the trial court rendered its ruling on December 2, 2021. Father argues he then took immediate steps by filing his motion to reopen the evidence on December 20, 2021.

In response, Mother argues Father did not show due diligence between the time he discovered the change in her relationship status and the time he filed the motion to reopen evidence. For support, she cites *In re Marriage of Murphy*, 561 S.W.2d 592 (Tex. App.—Amarillo 1978, no writ), which she argues stands for the proposition that a party is not diligent in filing a motion to reopen if he waits three weeks after a trial court's rendering. The facts presented in *Murphy*, however, are distinguishable from those presented here. The trial court in *Murphy* had denied the husband's motion to reopen the evidence, and the husband appealed. *Id*. at 593. Thus, under the abuse of discretion standard, the appellate court reviewed the evidence in the light most favorable to the trial court's denial and determined the trial court had not abused its discretion. *See id*. at 593. However, given the facts presented in this case, to hold the trial court abused its discretion in *granting* the motion to reopen the evidence, we would have to hold that, as a matter of law, Father did not exercise due diligence in filing his motion to reopen on December 20, 2021, and thus the trial court abused its discretion in granting Father's motion to reopen evidence. The record simply does not support such a holding. We agree with Father that in looking at the evidence

in the light most favorable to the trial court's ruling, the trial court could have determined that Father had no reason to doubt the relationship status between Mother and B.J. before trial and that Father was diligent in filing his motion to reopen evidence on December 20, 2021. *See In re B.J.M.*, 2015 WL 1244804, at *2.

Second, Mother argues that the evidence relating to her relationship status was not decisive to the best interest of the child and thus was insufficient to support a motion to reopen evidence. Mother argues the trial court abused its discretion in granting the motion to reopen evidence because the trial court's original ruling appointing her as primary conservator was supported by legally and factually sufficient evidence, and the "single factor of [her] and B.J. no longer residing together, absent any evidence adverse to E.G.M.'s best interest and absent any evidence B.J. provided [Mother]'s stability, is not decisive or material to alter the trial court's original ruling." Mother argues that evidence of B.J. moving out of her home does not show that her home lacked stability. According to Mother, evidence of stability of her home instead came from how she raises her two children, her reliable childcare, her supportive family system, her employment, and her being E.G.M.'s primary caretaker during the day.

In response, Father argues that the proffered evidence does go directly to the best interest of the child, pointing to Mother's own testimony at trial. At trial, Mother testified that she and her children shared a home with her "boyfriend" B.J. She testified that she and B.J. had been dating for "[a]lmost two years," and had been living together for "a year and a half now." She testified that her children were familiar with B.J. When asked how to describe the relationship between B.J. and her children, Mother testified at trial:

> He—he's a big baseball player, so [J.H.][3] always goes outside and plays with him. [E.G.M.] will sit there and watch, too. Now she's starting to play, and so, yeah, they love him.

---

[3] J.H. is also Mother's child. Father is not related to J.H.

Mother was asked by her counsel whether she had "any concerns about the emotional impact that has [sic] on your child being around numerous people in the home." Mother replied, "Yes." Mother testified she was concerned about two different women (one of whom is Father's present wife) living with Father since their breakup and how those relationships affected E.G.M:

> I don't want [E.G.M.] going—I don't want her seeing all of that, different girls all the time. I didn't want him to introduce anyone to her until he knew that they were serious, and he's [done] it, and I mean, I don't even know if there's more than those two. There could be more. Those are just the two that I know of.

Thus, Father argues that at trial Mother represented, in part, that her home was stable because of her long relationship with B.J. and that Father's home was not due to his multiple relationships.

At the hearing on Father's motion to reopen evidence, Mother was evasive in her answers regarding when exactly she and B.J. had ended their relationship and when she had begun her new relationship. As the factfinder, the trial court was free to disbelieve Mother's testimony and to not find her credible. Further, the trial court, as factfinder, was also free to find Father's testimony credible, and consider the admitted exhibits of the social media posts. *See Naguib*, 137 S.W.3d at 377 ("The trial court, as the trier of fact, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony."). Further, at the end of the hearing on Father's motion to reopen evidence, the trial court stated explicitly that its "prior ruling was based largely on the stability of the mother, and that appears to have been misrepresented," so that it was going to take the matter under advisement and look at the testimony from trial. Thus, the trial court explicitly stated that it considered evidence of Mother's long-term live-in relationship with B.J. a significant factor in its decision regarding E.G.M.'s best interest. While Mother may argue that her misrepresentations to the trial court about her former long-term relationship and present relationship status are no evidence relating to E.G.M.'s best interest, the trial court was within its discretion to consider such evidence as relevant to the stability of her home and how it affected

E.G.M.'s best interest. Thus, in looking at all the evidence in the light most favorable to the trial court's ruling, the trial court could have relied on the evidence presented at the motion to reopen evidence and determined that the proffered evidence was decisive to the issue of best interest of the child. *See In re B.J.M.*, 2015 WL 1244804, at *2.

Third, Mother argues because the trial court did not hold a hearing on Father's motion to reopen the evidence until February 1, 2022, the trial court's decision to reopen evidence caused undue delay to the finality of the case and an injustice to Mother "who lost primary conservatorship of her five-year-old daughter, and to E.G.M. who lost her daily and close-bonded relationship with her brother, J.H." We note that at the time the trial court granted its motion to reopen evidence, the trial court had not signed a final judgment and still had plenary power to take the action it did. The evidence presented at the hearing was limited to fifty-six pages in the reporter's record. Under our standard of review, we cannot hold the trial court's reception of the proffered evidence caused undue delay. *See In re B.J.M.*, 2015 WL 1244804, at *2. Nor can we hold under our standard of review that the trial court's decision to reopen evidence based on Mother's misrepresentations at trial caused injustice. *Id.*

Fourth, Mother argues the evidence presented at the motion to reopen evidence was improper because it was presented for the purpose of impeachment in violation of Texas Rule of Evidence 608. Mother, however, did not object on this basis at the motion to reopen evidence and thus had failed to preserve this issue for appeal. *See* TEX. R. APP. P. 33.1.

## CONCLUSION

As noted, in determining whether to permit additional evidence, a trial court should consider whether (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause injustice. *In re B.J.M.*, 2015 WL 1244804, at *2. In reviewing this

record in the light most favorable to the trial court's ruling, we find no abuse of discretion by the trial court in considering these factors and determining that Father's motion to reopen should be granted. *See id*. Therefore, we affirm the trial court's Reformed Final Order in Suit Affecting Parent-Child Relationship.

Liza A. Rodriguez, Justice